WATKINS, Judge.
This is a suit for a permanent injunction to prevent the building of a church on land in Fluker, Tangipahoa Parish, which plaintiff, Fluker Community Church, an unincorporated association, contends that it owns. Made defendants are the African Methodist Episcopal Church (A.M.E.), a religious corporation organized under the laws of Pennsylvania, the Rev. Simon Hookfin, the local A.M.E. minister and B. F. Hitchens, the Presiding Elder of A.M.E., who resides in Orleans Parish. The trial on the granting of a permanent injunction was treated by the trial judge and all parties as a trial on a petitory action, involving title to two adjoining tracts of property in Fluker, which we will call for purposes of this decision Tract I and Tract II, respectively. The trial court found title to both Tracts was in Plaintiff, and granted the permanent injunction.
Tract I was donated by Fluker Farms, Inc. to Board of Trustees, Fluker Colored Community Church by act of donation dated October 10, 1952. The act of donation contained the following language, “[t]his donation is made to the Board of Trustees of the church now or to be hereafter located upon the property herein donated, regardless of its organizational affiliations, although at present same is affiliated with the African Methodist Episcopal Church. . . ."
Tract II was acquired by “Fluker Chapel A.M.E. Church” from Fluker Farms, Inc. by “credit deed” dated October 1, 1969.
The church building of the church congregation has stood on Tract I since shortly before or shortly after the execution of the 1952 act of donation.
The congregation was formed around 1900 by the black community in Fluker. Although it originally had no affiliation with any sect or denomination, it soon began receiving its ministers from A.M.E. Since it first received ministers, it has never received a minister from any other denomination. The congregation paid assessments to A.M.E. on a regular basis, and it styled itself both “Fluker Community Church” and “Fluker Chapel A.M.E. Church”, the names being used interchangeably. Its members attended meetings of the representatives of the A.M.E. Church.
Some years after 1969 the local members became dissatisfied with the A.M.E.’s fail *1225 ure to maintain and repair the local building and property. After the local church had submitted several complaints to A.M.E. through its Quarterly Conference and the •Bishop, a meeting was called to consider severing all ties with A.M.E. Notice of the meeting was given by posting and distributing handbills in the community. The handbills stated that the “Purpose of the meeting is to decide whether this church is to remain in the A.M.E. Association or whether it will withdraw from same and become an independent church.” The handbills further stated that voting at the meeting would be “limited to those persons domiciled within the Fluker Community geographical area and being 12 years of age or older.”
The meeting was held on September 23, 1979. Voting took place through physically standing and voting for or against withdrawing from A.M.E. and signing sheets of paper voting for or against that withdrawal. A majority in the standing vote voted to withdraw form A.M.E. On the sheets of paper, 61 signed in favor of withdrawing from A.M.E. and 3 voted against withdrawing.
The local congregation sent a letter to A.M.E. notifying it of its intention to be independent. The few members remaining loyal to A.M.E. continued to meet and receive the pastor appointed by A.M.E. In February of 1980, A.M.E. began the construction of the church on Tract II which precipitated the filing of the present suit.
Under the First Amendment to the United States Constitution granting religious freedom, we cannot decide in favor of one doctrine, belief, or ritual as opposed to another. Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). However, the present dispute involves solely administrative control, and does not involve doctrine, belief, or ritual, so far as we can determine from the record. In any event, the case will be decided solely on the question of title and administrative control, and we will abide by the Constitutional admonition not to concern ourselves with doctrine, faith, belief, ritual, or liturgy.
Under the most recent Louisiana landmark case on the question of control of a religious congregation, Katz v. Singerman, 127 So.2d 515, 241 La. 103 (1961), the rule is set forth, based on prior decisions of Louisiana courts, that in a religious denomination having independent religious congregation, the will of the majority shall control, while in a religious denomination having a central or hierarchical structure, the local congregation, regardless of the will of the local majority, shall be bound by the rules of the central hierarchical structure. So long as the courts do not enforce religious ritual or belief, the Katz analysis, which is also the analysis adopted in many other states, is still the law of this state, and we will apply this analysis to the facts presented by this case.
The A.M.E. is a hierarchical religious organization, having bishops and a central national, or international, structure. Its local congregations are not independent religious bodies, but are subject to rules of the general A.M.E., which are embodied in a set of documents collectively bound in a single volume known as The Book of Discipline. The Book of Discipline contains no provision permitting withdrawal of a local congregation from the central A.M.E., and we therefore assume that such withdrawal is not permitted under the rules of the A.M.E. In any event, the record is replete with implications that such a withdrawal is forbidden by A.M.E.
The local congregation attempted to withdraw from A.M.E. The local congregation, it is true, was originally independent. However, soon after its formation around 1900 it began to receive ministers from A.M.E., and has never received ministers from any other denomination. It styled itself alternately and interchangeably “Fluker Community Church” and “Fluker Chapel A.M.E. Church”. It paid assessments to A.M.E. It sent delegates to A.M.E. meetings. It is thus clear that it was an A.M.E. congregation. Indeed, the handbill and vote were couched in terms of “withdrawing” from A.M.E. It is thus apparent that a prior affiliation was admitted *1226 by the proponents of disaffiliation themselves.
The act of sale (“credit deed”) for Tract II was to “Fluker Chapel A.M.E. Church”. The terms of the deed itself thus indicate an affiliation with A.M.E. A.M.E. is a hierarchical religious body. As the act of sale indicates a desire on the part of the vendees that the congregation be and remain affiliated with A.M.E., and as the hierarchical organization, the A.M.E., did not permit withdrawal, the subsequent attempted withdrawal could not vest title in the withdrawing majority. The will of the hierarchical organization prevails under the Katz dichotomy regardless of the will of the congregational majority, where the congregations are not independent. The portion of the congregation remaining loyal to A.M.E., however small in number and however they may style themselves, must have title to Tract II. Thus, the trial court erred in enjoining the defendants from building a new church on Tract II, and in finding that plaintiffs owned Tract II.
Tract I presents a different situation. The act of donation for Tract I provides that Fluker Community Church will own that tract “regardless of its organizational affiliations, although at present same is affiliated with the African Methodist Episcopal Church. . . . ” Thus, by the terms of title itself, the control of A.M.E. is negated. Under the Katz dichotomy, either the majority of the local congregation prevails or the will of the hierarchical organization controls. The act of donation forbids us to consider the will of A.M.E., the hierarchical organization, as the local congregation is to own the property under terms of the donation “regardless of its organizational affiliations”. We cannot violate the wishes of the donor corporation by diverting the title to Tract I to the minority faction loyal to A.M.E., when the majority voted in favor of withdrawal. It is true that the proceedings were extremely loose. The local church had no written articles of incorporation, constitution, by-laws, or rules. Everything was done verbally. The handbill, which is one of the few documents in writing, is extremely broad in its rules concerning voting. We especially note that The Book of Discipline promulgated by A.M.E. limits voting to those of over age 18, while those of age 12 or over were permitted to vote by the handbill. However, the overwhelming nature of the vote in favor of withdrawing overcomes all these absences of formality. The vote was 61 to 3. Of those over age 18 who entered their ages and signatures on the signature sheet, 35 voted to withdraw and 2 voted against withdrawing. We must, therefore, assume that the majority of those who voted regularly voted in favor of withdrawing from A.M.E. Indeed, the testimony on behalf of defendants appears to admit that the overwhelming majority favored severing all ties with A.M.E.
Under the Katz dichotomy, either the will of the majority or the will of the central organization must prevail. The deed prevents us from binding the title of Tract I by consideration of affiliation with A.M.E. The will of the majority, whether or not it is affiliated with A.M.E. determines what becomes of title to Tract I. The majority voted to disaffiliate themselves with A.M.E. As the majority is no longer affiliated with A.M.E., and as plaintiff organization, which styles itself “Fluker Community Church”, is composed of that majority, plaintiff owns Tract I.
We, therefore, amend the judgment of the trial court so that judgment is now rendered as follows:
(1) Title to Tract I, which has the following property description, is awarded to plaintiff:
“Two (2) acres of land situated in Headright 55, T 3 S R 7 E., more fully described as follows, to-wit:
Commence at a point 6.78 chains East of the Southwest corner of Section 4, T 3 S R 7 E., being Clara Ruffin’s Southeast corner, thence East 3.30 chains to school lot, thence North 0 degrees 15 minutes East 6.06 chains, thence North 89 degrees *1227 42 minutes West 3.30 chains, thence South 0 degrees 15 minutes East 6.08 chains to South line of Section 55, and the point of beginning. Being the same property designated as Church Lot on plat of survey of O. C. Hollister, registered surveyor, dated April 19, 1951, being subdivision of Sections 4 and 5 and Headright 55, T 3 S R 7 E., which plat is recorded herewith.”
(2) Title to Tract II, which has the following property description, is awarded to that faction of the local congregation loyal to A.M.E.:
“3.67 acres of land more or less situated in Parish of Tangipahoa, State of Louisiana, commencing at a point on the So. line of Sec. 55, T 3 S R 7 E at 500 feet E. of the S. W. corner of said section, thence North 0 ° 15 min. E. 400 feet, thence E. 400 feet, thence S. 0 0 15 min. W. along the center line of old Hwy., 400 feet to the So. line of said section 55, thence W. 400 feet to the point of beginning. Less and except 30 feet by 50 feet deeded to Fluker Chapel Water Works, Inc., by Fluker Farms, Inc. which deed with the description and measurements of the 30 X 50 feet is recorded in conveyance records of Tangipahoa Parish, Louisiana, acquired in COB 190, page 81.”
(3) The permanent injunction sought and granted is hereby vacated and denied.
All costs shall be borne equally by the parties.
AMENDED AND AFFIRMED.