419 So.2d 445 (1982)
FLUKER COMMUNITY CHURCH
v.
F. B. HITCHENS, et al.
No. 81-C-3286.
Supreme Court of Louisiana.
September 7, 1982.
Lawrence Blake Jones, Scheuermann & Jones, New Orleans, for applicant.
Nelson D. Taylor, Gail Horne Ray, Baton Rouge, Gilbert Stampley, New Orleans, for respondents.
DENNIS, Justice.
This case presents the question of whether a local church which has disaffiliated from an international hierarchical church may have the latter enjoined from erecting a building on property of which the rebel local church is the titleholder. After the trial court confirmed the local church's title to the property and enjoined further construction, the court of appeal, 405 So.2d 1223, reversed, awarded title to the hierarchical church and vacated the injunction. We vacate the judgments of both previous *446 courts and dismiss plaintiff's suit at its cost. Applying neutral principles of contract and property law to the hierarchical church's discipline and the local church's deed to the property, we conclude that exclusive authority over the property was vested in the hierarchical church when the local church disaffiliated.
The Fluker Community Church is an unincorporated association which has functioned as a religious society in Tangipahoa Parish for almost one hundred years. Shortly after the turn of the century, Fluker became associated with the African Methodist Episcopal Church, a hierarchical religious corporation organized under the laws of Pennsylvania. Fluker has received all of its ministers from A.M.E., has paid regular assessments to A.M.E., has submitted itself to the discipline and doctrine of A.M.E., and has at times called itself "Fluker Chapel A.M.E. Church." We agree with the court of appeal's finding that Fluker by these acts fully affiliated itself as a member of A.M.E. On the record as a whole, the trial court's determination to the contrary is clearly incorrect.
This case centers around a parcel of land, which we will call Tract A, which was transferred from Fluker Farms, Inc. by an act of sale ("credit deed") to "Fluker Chapel A.M.E. Church, Fluker, Louisiana" on October 1, 1969. The provisions in the deed are to be contrasted with those contained in the act of donation of another tract, which will be referred to as Tract B. Tract B, which is not directly involved in this lawsuit, was donated by Fluker Farms, Inc. to the "Board of Trustees, Fluker Colored Community Church" by act of donation dated October 10, 1952. The act provided "[t]his donation is made to the Board of Trustees of the church now or to be hereafter located upon the property herein donated, regardless of its organizational affiliations, although at present same is affiliated with the African Methodist Episcopal Church * * *." At the time this controversy arose Tract A was vacant and Fluker's church building was located on Tract B.
The present dispute began when A.M.E. refused a request by Fluker members to divert funds from A.M.E.'s African missions to maintain and repair Fluker's church building on Tract B. After Fluker had submitted several complaints to A.M.E. and its Bishop, a majority of Fluker members at a meeting on September 23, 1979 voted to disaffiliate from A.M.E. Members of the local congregation notified A.M.E. of Fluker's intention to be independent.
A handful of Fluker members remained loyal and continued to worship under the pastorship of an A.M.E. minister. In 1980 this remnant of the local congregation, acting with the express authorization and approval of A.M.E., began to erect a new building on Tract A.
Fluker brought this suit for possession of Tract A and an injunction of the construction against A.M.E. and several of the loyalists. After a trial, the district court confirmed Fluker's title and enjoined A.M.E. and the loyalists from interfering with the local association's ownership rights. On appeal, the appellate court vacated the injunction, granted title to Tract A to A.M.E., and awarded title to Tract B to Fluker.
We think both judgments below were incorrect. Ownership of property is not at issue in this case. The deed places title to Tract A in Fluker and none of the parties has questioned the validity of that instrument. The question actually presented is whether A.M.E. has the right to control the actions of the titleholder of Tract A, and thereby to control the use of Tract A. On the other hand, Tract B does not appear to be directly involved in this lawsuit at all.
The First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. Presbyterian Church v. Hull Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). Most importantly, the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice. Id.; Serbian Orthodox Diocese v. Milivojevich, 426 U.S. 696, 710, 96 S.Ct. 2372, 2381, 49 L.Ed.2d 151 (1976).
*447 But it is now clear that a state, as a means of adjudicating a church property dispute, is constitutionally entitled to adopt a "neutral principles of law" analysis involving consideration of the deeds, state statutes governing the holding of church property, the local church's charter, and the general church's constitution and laws. The First Amendment does not require a state to adopt a rule of compulsory deference to religious authority in resolving church property disputes, where no issue of doctrinal controversy is involved. Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).
Indeed, we think the safeguards against laws establishing religion and prohibiting the free exercise thereof contained in the First Amendment and in Article I, § 8 of our state constitution necessitate our adoption of the "neutral principles" approach. Whatever authority a hierarchical organization may have over associated local churches is derived solely from the local church's consent. Refusal to adjudicate a dispute over property rights or contractual obligations, even when no interpretation or evaluation of ecclesiastical doctrine or practice is called for, but simply because the litigants are religious organizations, may deny a local church recourse to an impartial body to resolve a just claim, thereby violating its members' rights under the free exercise provision, and also constituting a judicial establishment of the hierarchy's religion. A. Adams & W. Hanlon, Jones v. Wolf: Church Autonomy and the Religion Clauses of the First Amendment, 128 U.Penn.L.Rev. 1291 (1980). Cf. Hargrave, Louisiana Constitutional Law, 42 La.L.Rev. 596 (1982).
The application of the neutral principles approach, of course, is not wholly free of difficulty. The method, as it has evolved in Georgia, and as approved by the Supreme Court in Jones v. Wolf, requires a civil court to examine certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. As the high court observed:
"In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining whether the document indicates that the parties have intended to create a trust. In addition, there may be cases where the deed, the corporate charter, or the constitution of the general church incorporates religious concepts in the provisions relating to the ownership of property. If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body. 443 U.S. at 604, 99 S.Ct. at 3026, 61 L.Ed.2d at 785.
As part of its neutral principles analysis, a state may adopt a presumption that, absent some indication to the contrary, a voluntary religious association is represented by a majority of its members. Any rule of majority representation can be overcome either by providing in the corporate charter or the constitution of the general church, that the identity of the local church is to be established in some other way, or by providing that the church property is held in trust for the general church and those who remain loyal to it. Indeed, a state may adopt any method of overcoming the majoritarian presumption, so long as the use of that method does not impair free exercise of rights or entangle the civil courts in matters of religious controversy. Jones v. Wolf, supra, 443 U.S. at 607-608, 99 S.Ct. at 3027-28, 61 L.Ed.2d at 787-88.
Although we have not before expressly adopted the neutral principles approach, the method has been employed in practice by this court and our courts of appeal with increasing frequency. See, Bourgeois v. Landrum, 396 So.2d 1275 (La.1981); Katz v. Singerman, 241 La. 103, 127 So.2d 515 (1961); Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir. 1980); see also, Hargrave, supra. Louisiana has legislatively adopted a presumptive rule of majority representation with respect to alienation or encumbrance *448 of an unincorporated non-profit association's immovable property defeasible upon a showing of a contrary intention in its constitution, charter, by-laws, rules or regulations under which it is organized, governed, and exists. La.C.C. art. 446 (Supp.1980).
Applying these precepts to the facts of the present case, we conclude that the presumptive rule of majority control of use of Tract A has been overcome in favor of the hierarchical organization by provisions contained in its discipline and in the deed of acquisition.
The act of sale recites that the tract was sold by Fluker Farms, Inc. to "Fluker Chapel A.M.E. Church, Fluker, Louisiana." [emphasis added] The church was represented by the church pastor, an A.M.E. minister, and the church secretary. The sale of Tract A did not contain any language such as that included in the donation of Tract B which tended to exclude A.M.E.'s control or use of Tract B. Consequently, Fluker acted solely within its capacity as an A.M.E. local church in acquiring Tract A.
Moreover, A.M.E.'s discipline contains regulations which effectively vest control of Tract A in the hierarchy. Under Section 3, pertaining to local church property, a proposed transfer of local church property must be approved by the trustees of the annual A.M.E. conference of which the presiding A.M.E. bishop is president. Under Section 2, pertaining to general church property, the discipline provides that if any church property is abandoned as a consequence of the disbanding of the "society" the title of said property shall vest in the A.M.E. annual conference in which it is located. From another portion of the discipline entitled "General Rules of the United Societies," it is apparent that "society" is the historical appellation for a local A.M.E. church congregation.
Applying the neutral principles which are evoked by our examination of the documents in purely secular terms, we conclude that it was the intention of the parties, agreed upon before the dispute arose, that Tract A may not be alienated without A.M. E.'s consent, and will be considered abandoned to A.M.E. upon Fluker's disbanding as an A.M.E. society. Accordingly, because of Fluker's disaffiliation without a prior valid transfer of Tract A, A.M.E. has become vested with the exclusive right to control its use and to compel the transfer of its title if necessary. Since Fluker does not have a right, which the law will recognize, to be immune from the use and control of Tract A by A.M.E., it is not entitled to injunctive relief. Terrebonne Police Jury v. Matherne, 405 So.2d 314, 318 (La.1981).
The court of appeal correctly recognized that there are significant distinctions between the donation of Tract B and the circumstances surrounding the acquisition of Tract A. It may be that an application of the neutral principles approach would yield a different result as to Tract B. However, insofar as the record discloses, the present controversy is limited to Tract A. If any dispute should arise over Tract B, it must be resolved at that time by further litigation or, preferably, by agreement between the parties.
For the reasons assigned, the previous courts' judgments are vacated and the plaintiff's suit is dismissed at its cost.
JUDGMENTS VACATED; PLAINTIFF'S SUIT DISMISSED.
MARCUS, J., dissents in part and concurs in part and assigns reasons.
LEMMON, J., dissents in part and will assign reasons.
MARCUS, Justice (dissenting in part and concurring in part).
I disagree with the majority's conclusion that title to Tract A is in the local disaffiliated church subject to the "exclusive right" of A.M.E. "to control its use and to compel the transfer of its title if necessary."
Rather, I consider that the title to Tract A is vested in the local congregation loyal to A.M.E. When the local church became affiliated with A.M.E., it became subject to the disciplines of the hierarchical organization. See Katz v. Singerman, 241 La. 103, *449 127 So.2d 515 (1961). The disciplines seem to prohibit the withdrawal of a local congregation from the central A.M.E. Therefore, title to Tract A remains in the local members of A.M.E. and is subject to their ownership and control. Hence, the injunction sought by the local church that withdrew from A.M.E. (plaintiffs) was properly denied.
Accordingly, I dissent from the majority's vacating the judgment of the court of appeal awarding title to Tract A to the faction of the local congregation loyal to A.M.E. but concur in the majority's denial of an injunction to plaintiffs.