28 So.3d 1044 (2009)
AFRICAN METHODIST EPISCOPAL CHURCH, INC.
v.
Rev. Larry STEWART.
No. 2009 CA 0405.
Court of Appeal of Louisiana, First Circuit.
September 17, 2009.
Writ Denied December 18, 2009.
*1045 Thomas J. Hogan, Jr., Hammond, LA, for Defendants/Appellants, Larry Stewart and Rising Star Community Church.
Cassandra Butler, Independence, LA, for Plaintiff/Appellee, African Methodist Episcopal Church, Inc.
Before DOWNING, GAIDRY and McCLENDON, JJ.
DOWNING, J.
Reverend Larry Stewart, pastor of the Rising Star Community Church[1] (Rising Star), and Rising Star appeal a judgment decreeing that title to the disputed property at issue is vested in the Annual Conference of African Methodist Episcopal Church in Louisiana and Mississippi (L & M A.M.E.), the denominational hierarchy. For the following reasons, we reverse the trial court judgment in this regard, and we declare Rising Star to be owner of the subject property.

PERTINENT FACTS AND PROCEDURAL HISTORY
This matter returns to this court after we raised on our own motion and granted the peremptory exception of nonjoinder of a party under Articles 641 and 642. We noticed that the record owner of the immovable property at issue was "the Rising Star A.M.E. Church, an unincorporated religious association, herein represented by Eldon J. Pipes, Treasurer, and Robert Austin, Trustee, and members," and that this record owner was not named as a defendant. African Methodist Episcopal Church, Inc. v. Stewart, 07-1303 (La.App. 1 Cir. 3/26/08) (unpublished), 978 So.2d 1259 (Table). L & M A.M.E. had filed suit against Reverend Stewart for injunctive and declaratory relief. This court observed that the record owner is a necessary party under La. C.C.P. art. 641(1) for determination of ownership of the immovable property at issue. Id. Accordingly, this court vacated a portion of the trial court judgment signed January 16, 2007, insofar as it declared ownership of the immovable property.[2] Pursuant to this court's instruction, L & M A.M.E. amended the petition to name Rising Star as a defendant. Id. Rising Star answered the amended petition admitting that Rising Star is named as a defendant and that a named person was a proper person for service.
*1046 At a hearing in September 2008, the parties stipulated that no new evidence would be introduced and asked the trial court to rule on the evidence previously submitted. Accordingly, the trial court again entered judgment declaring, in pertinent part, that title to the subject property was vested in the L & M A.M.E.
Reverend Stewart and Rising Star now appeal alleging in one assignment of error generally that the trial court failed to apply neutral principles of law by disregarding evidence showing that the denomination failed to carry its burden of proof.

DISCUSSION
Courts resolve disputes involving religious organizations employing "neutral principles of law" where there is no issue of "doctrinal controversy" or of "interpretation or evaluation of ecclesiastical doctrine or practices." See Fluker Community Church v. Hitchens, 419 So.2d 445, 447 (La.1982). We must "examine certain religious documents, such as a church constitution, with an attitude of "neutrality and non-entanglement." Id. We must apply "the neutral principles which are evoked by our examination of the documents in purely secular terms." Id. 419 So.2d at 448.
Here, Rising Star concedes that it was an A.M.E. church subject to control of the hierarchical A.M.E. organization. It argues, however, that under the A.M.E. rules, the title to the property at issue remains with the congregation. L & M A.M.E. also asserts that "[t]he A.M.E. Church's rules should dictate." Both parties argue that Fluker's principles control this controversy. We, therefore, review the evidence in the record, including an excerpt from the African Methodist Episcopal Discipline (Discipline), employing neutral principles of law to determine the rights of the respective parties. Church disciplines and regulations should be considered in determining property disputes. As this court observed in Louisiana District, Church of the Nazarene v. Church of the Nazarene, 132 So.2d 667, 680 (La.App. 1 Cir.1961):
Since in the various religious sects or denominations local congregations submit to a greater or lesser degree to the authority of the general church, it necessarily follows the constitution, rules, regulations and discipline of the general church which the local subordinate has accepted and embraced willingly in each case determine the extent of the authority of the local church to control church property whether held by the local group in its own name or held in trust for the general organization.
The parties offered the Discipline into evidence at trial as a joint exhibit. We first observe that the Discipline entered into evidence here appears to differ from that utilized in Fluker, although both cases involve A.M.E. churches. The Discipline before us appears to be organized differently. In Fluker, the court did not consider the provision at issue here regarding control of property in the absence of an "in trust" clause. We do not know if such provision was contained in the A.M.E. Discipline when Fluker was decided in 1982. Nor do we know how the Discipline has been amended.
The Discipline before us contains a requirement that property held by "the local churches" shall be held "IN TRUST" for the African Methodist Episcopal Church, Inc. The act of sale at issue has no "IN TRUST" clause.
The Discipline, however, contains another rule specifically governing the relationship between the parties in the absence of an "IN TRUST" clause in the act of sale. This rule states that the absence of an "IN TRUST" clause "shall not exclude a local *1047 church from or relieve it of its Connectional character and responsibilities," nor shall the absence of the "IN TRUST" clause "excuse or absolve" the local congregation from its responsibilities and accountability," "provided" the following conditions are met[3]:
1. Use of the name, customs, polity, or literature of the A.M.E. Church, Inc., in such a manner as to be known as a part of the A.M.E. Church connection.
2. Conveyance of said property to the trustees of a local church or agency to the A.M.E. Church, Inc.
3. The acceptance of the pastorate of ministers appointed by a bishop of an episcopal district or annual conference of the A.M.E. Church, Inc.
4. The payment of conference assessments or dues.
5. The participation and enrollment of the church as a member of the connection of the A.M.E. Church, Inc., by said local church in the Quarterly Conference and the Annual Conferences.
Rising Star concedes that it exhibited the characteristics outlined in provisions 1, 3, 4, and 5. It asserts, however, that since no evidence exists of its compliance with provision 2, control of the property at issue never transferred to L & M A.M.E.
Under the terms of the Discipline, the L & M A.M.E. retains control of property if the local church complies with the five provisions. We agree with Morning Star that L & M A.M.E. has failed to establish compliance with provision 2. This language, "Conveyance of said property to the trustees of a local church or agency to the A.M.E. Church, Inc.," is at best ambiguous. Even so, nothing in the act of sale can be interpreted to convey the property "to the A.M.E. Church, Inc." The property is titled to "the Rising Star A.M.E. Church, an unincorporated religious association, herein represented by Eldon J. Pipes, Treasurer, and Robert Austin, Trustee, and members." The authentic act of sale was executed by Eldon J. Pipes and Robert Austin, on behalf of the *1048 church. Conveyance is to the local church, but not "to the A.M.E. Church, Inc."
When asked what provision 2 meant, Bishop Henning of the L & M A.M.E. explained that provision 2 referred to a "required statement" that is "done at the time the church is purchased." No such statement is in the record, although L & M A.M.E. could have required one prior to providing ministers and services. Also included in the Discipline is a Section E, entitled "Form of Deed." This appears to be a draft of the required statement referenced by Bishop Henning in that it recites its necessity based at least partly because conveyance documents "are devoid of declarations appropriate to compliance" with specific provisions of The Doctrine and Discipline of the African Methodist Episcopal Church." The specified provisions of the Doctrine and Discipline were not entered into evidence. Regardless, no such "deed" was entered into evidence.
Louisiana has legislatively adopted a presumptive rule of majority representation with respect to alienation or encumbrance of an unincorporated non-profit association's immovable property, defeasible upon a showing of a contrary intention in its constitution, charter, by-laws, rules, or regulations under which it is organized, governed, and exists. Fluker, 419 So.2d at 447-48. See also La. R.S. 9:1051.[4] Here, L & M A.M.E. argues that all five provisions are met and that it retains the right to control the property. Applying the neutral principles of law that are evoked by our examination of the documents and evidence in purely secular terms, however, we conclude that L & M A.M.E. has failed to establish compliance with a necessary provision of the Discipline. L & M A.M.E.'s Discipline, therefore, does not contain regulations that effectively vest control of the property at issue in it under the facts of this case. Accordingly, we conclude that L & M A.M.E. failed to meet its burden of overcoming this presumption.[5] To the extent the trial court found otherwise, we conclude that it was manifestly erroneous, and we will reverse the judgment of the trial court in this regard. Rising Star's assignment of error has merit.

*1049 DECREE
For the foregoing reasons, we reverse and vacate the judgment of the trial court insofar as it grants judgment in favor of the African Methodist Episcopal Church in Louisiana and Mississippi, decreeing that title to the following property is vested in it:
Two (2) certain lots or parcels of ground located in the Parish of Tangipahoa, State of Louisiana, and being more particularly described as follows:
LOTS 11 AND 12, BLOCK 7, Arnold Addition to Natalbany, East Side, in the Parish of Tangipahoa, State of Louisiana, being the same property acquired by the Rising Star A.M.E. church by deed recorded at COB 532 page 089, Records of Tangipahoa Parish.
Further, IT IS ORDERED, ADJUDGED AND DECREED that RISING STAR COMMUNITY CHURCH, an unincorporated religious association, be declared full owner of the described property in accordance with La. R.S. 9:1051.[6]
Costs of this appeal are assessed against the Annual Conference of African Methodist Episcopal Church in Louisiana and Mississippi.
REVERSED; RENDERED.
McCLENDON, J. concurs and assigns reasons.
McCLENDON, J., concurs and assigns reasons.
I agree with the majority that Rising Star A.M.E. Church (Rising Star) is the owner of the immovable property at issue herein. Said issue was directly answered by Fluker Community Church v. Hitchens, 419 So.2d 445, 446 (La.1982), wherein the supreme court held that ownership is determined by the named deed holder. Since the deed in this matter places title to the property in Rising Star and no one questions the validity of that instrument, ownership of the property rests with Rising Star, and no further analysis is necessary. Thus, most of the majority's analysis is an exercise unnecessary to the only issue raised in this appeal, i.e., ownership. In this matter, unlike the Fluker case where possession and not ownership was at issue, ownership was the only issue pled. The question of whether the Annual Conference of African Methodist Episcopal Church in Louisiana and Mississippi (L & M A.M.E.) has the right to control the actions of the title holder of the property, and thereby the right to control the use of the property, is not before us. L & M A.M.E. amended its petition to ask for only a declaratory judgment on the ownership of the building and the property. It did not ask for a determination of the right to control or possess. Accordingly, all discussion regarding the L & M A.M.E.'s authority over Rising Star based on the African Methodist Episcopal Discipline (Discipline) of the general church is merely dicta, and further, it is arguably incorrect. In the absence of an "in trust" clause in the act of sale, as is the case here, five conditions are required to keep the local church's connectional character and responsibilities to the general church. The isolated manner in which the majority reads the second provision of the Discipline essentially negates the necessity of the other four provisions. The majority's statement that there is nothing in the act of sale that can be interpreted to convey the property "to the A.M.E. Church, Inc." fails to read provision 2 in para materia *1050 with the remaining provisions. This was clearly not the intent of the Discipline.
Nonetheless, because the act of sale clearly places title to the property in dispute in the hands of Rising Star, I respectfully concur.
NOTES
[1] This church was formerly named the Rising Star A.M.E. Church. The congregation changed its name when it renounced affiliation with the hierarchical denomination.
[2] In the January 17, 2007 judgment, the trial court ruled in favor of L & M A.M.E. It entered judgment (1) decreeing a permanent injunction against Rev. Stewart and Rising Star, and (2) declaring ownership of the subject property in L & M A.M.E. The injunction was not appealed, although Rising Star was not a party to that judgment. Nothing in the record shows that it was served or waived service. As this court observed in its prior opinion, the judgment as it applies to Rising Star appears to be unenforceable, African Methodist Episcopal Church, Inc. v. Stewart, 07-1303, p. 2 n. 2. As to Rising Star, the prior judgment appears to be an absolute nullity. See La. C.C.P. art. 2002(A)(2). This issue, however, is not before us and we do not decide it.
[3] The exact language of Section A, entitled "Purchase, Transfer" is as follows:

The African Methodist Episcopal Church, Inc., is organized and functions solely as a connectional church. The title(s) to all real, personal and mixed property held by the General. Annual Conference level or by the local churches, shall be held IN TRUST for the African Methodist Episcopal Church, Inc., and subject to the provisions of The Doctrine and Discipline of the African Methodist Episcopal Church.
However, in the absence of an IN TRUST clause as indicated herein, in deeds, and documents of conveyances previously executed shall not exclude a local church from or relieve it of its Connectional character and responsibilities to the African Methodist Episcopal Church, Inc., nor shall the lack of the IN TRUST phrase excuse or absolve a local congregation, church agency, or Board of Trustees of its responsibilities and accountability to the African Methodist Episcopal Church, Inc., provided, the intent and desires of the founders and of the later congregations or Board of Trustees have all demonstrated the following conduct:
1. Use of the name, customs, polity, or literature of the A.M.E. Church, Inc., in such a manner as to be known as a part of the A.M.E. Church connection.
2. Conveyance of said property to the trustees of a local church or agency to the A.M.E. Church, Inc.
3. The acceptance of the pastorate of ministers appointed by a bishop of an episcopal district or annual conference of the A.M.E. Church, Inc.
4. The payment of conference assessments or dues.
5. The participation and enrollment of the church as a member of the connection of the A.M.E. Church, Inc., by said local church in the Quarterly Conference and the Annual Conferences.
(Emphasis added.)
[4] La. R.S. 9:1051 provides:

A. Corporations unauthorized by law or by an act of the legislature enjoy no public character, although these corporations may acquire and possess estates and have common interests as well us other private societies.
Unless otherwise provided by its constitution, charter, bylaws, rules, or regulations under which it is organized, governed, and exists, any unincorporated nonprofit association may alienate or encumber title to immovable property to any person. For the purposes of this article, immovable property includes, without limitation, mineral rights, predial servitudes, and predial leases, and a transaction to alienate or encumber shall include, without limitation, transactions to mortgage, hypothecate, donate, or transfer title to immovable properly. Any such transaction shall be authorized by resolution adopted by a majority of the members of the association who vote on the resolution at a special meeting called and held for that purpose. The resolution may designate a person or persons to act as agent for the purpose of effectuating the transaction. Notice of the special meeting, including the date, time, and place of the meeting and the substance of the contemplated resolution, shall be published, on two separate days as least fifteen days prior to the date of the meeting, in the official journal of the parish in which a majority of the members reside or, if none, in a newspaper of general circulation in the parish. A copy of the resolution and proof of publication as required herein shall be attached to each act effectuating the transaction.
[5] Cf. Fluker, 419 So.2d at 448 where the supreme court concluded that "the presumptive rule of majority control of use of [the property] has been overcome in favor of the hierarchical organization by provisions contained in the discipline and in the deed of acquisition." (Emphasis added.)
[6] See La. R.S. 13:4434 and La. R.S. 13:4435 regarding registration of a decree rendered by a court of appeal.