CARTER, C.J.
12This matter is before this court on appeal by the defendant, the Presbytery of South Louisiana (hereinafter referred to as “the Presbytery”), from a judgment in a suit for declaratory judgment and permanent injunction rendered in favor of plaintiff, Carrollton Presbyterian Church (hereinafter referred to as “Carrollton”), and from an order of contempt.
FACTS AND PROCEDURAL HISTORY
Carrollton and the Presbytery are constituent members of the Presbyterian Church (U.S.A.) (hereinafter “PCUSA”). The PCUSA’s governing document is its constitution, comprised of two books, one of which is the Book of Order. The Book *977 of Order outlines the PCUSA’s organizational structure, pursuant to which, the Presbytery (one of the PCUSA’s governing bodies) exercises certain supervisory powers and authority over Carrollton (a local church), subject to review by the next higher governing body.
Carrollton was organized in 1855 and incorporated as a Louisiana corporation in 1894. Over the course of years, Carrollton acquired property in its name, including the immovable property in New Orleans that is the site of Carrollton’s sanctuary. Carrollton also sold property it held in its name. In recent years Carrollton’s membership had declined, and there was some talk of Carrollton dissolving, although Car-rollton did not formally petition to do so. Carrollton also began investigating a potential sale of its sanctuary property.
The declaratory judgment portion of this dispute raises the issue of whether Carroll-ton holds, in full and exclusive ownership, property held in its name, and therefore, may sell its property as it desires. The Presbytery maintains that Carrollton is subject to the Book of Order’s express trust provision, which creates an express trust in church property in favor of the PCUSA. Carrollton argues that the trust provision of the Book of Order does not comply with Louisiana trust law Land further contends that the provision is inapplicable here, as Carrollton timely exercised its option to exempt itself from the trust provision.
After Carrollton amended its petition, the district court granted a temporary restraining order (“TRO”) prohibiting the Presbytery from establishing an administrative commission to take jurisdiction over Carrollton’s “session.”[1] After finding that Carrollton set forth a prima facie showing that it would prevail on the merits of the suit, the district court issued a preliminary injunction effective against the Presbytery and pertaining to all property held by or for Carrollton, enjoining the Presbytery from filing documents in the mortgage and conveyance records of Orleans Parish that would create a cloud on Carrollton’s title to its property, or interfering with Carrollton’s right to determine ownership, use, control, or disposition of its property. The preliminary injunction further enjoined the Presbytery from: changing the church locks; initiating disciplinary action against Carrollton’s ministers or members in relation to the subject matter of this litigation; dissolving Car-rollton or appointing or initiating processes leading to appointment of an administrative commission to assert jurisdiction over Carrollton to assume control over its governance of or control of the subject property; or interfering with Carrollton in any way pertaining to ownership, control, use, or disposition of church property.
The district court then granted Carroll-ton’s motion for summary judgment, declaring that all property held by, for, or in Carrollton’s name is held and owned by Carrollton, which holds and owns all property in its name in full, complete, and unfettered ownership in accordance with Louisiana law and further, that the express trust provisions relied on by the Presbytery are unenforceable and without legal effect as to the subject property. Additionally, the district court issued a permanent injunction enjoining the Presbytery from asserting ownership, use, |4control, or a trust over any property titled in. Carrollton’s name and also from taking any action that could affect Carroll-ton’s property rights, which specifically included, but was not limited to, the actions enumerated in the preliminary injunction.
The Presbytery now appeals.
*978 JURISDICTION
After lodging of the appellate record, this court, ex proprio motu, issued a rule to show cause why this appeal should not be dismissed, as it appeared that the motion for appeal was untimely filed. The matter was briefed and the record corrected, in part, by the district court. Having examined the record herein, we are satisfied that a motion and order for appeal were timely filed with the district court. Although the order of appeal was not signed within the delays for perfecting a suspensive appeal, it is apparent that this was due to ongoing litigation regarding the amount of the suspensive appeal bond. Thus, the fault for the order not being timely signed is not clearly imputable to the appellant. Since the motion and order were timely filed, the appeal will not be dismissed because the order was not timely signed. See Traigle v. Gulf Coast Aluminum Corp., 399 So.2d 183, 186 (La.1981); Hill v. Hill, 412 So.2d 1156, 1157 (La.App. 1 Cir.1982). Accordingly, the rule to show cause is hereby recalled and the appeal maintained as qualified herein.[2]
Unrelated to the rule to show cause, Carrollton filed a motion to partially dismiss this appeal. While these matters were proceeding below, the parties were engaged in numerous discovery disputes that prompted court-ordered production of 1 sdocuments and motions for contempt and sanctions. On the same date that the district court rendered the summary judgment at issue in this appeal, it signed an order (“the order”) granting a motion for contempt filed by Carrollton and ordering the Presbytery to pay all costs, fees, and expenses reasonably incurred with the motion for contempt, and making other rulings pertaining to the production of certain documents. The order of appeal purports to grant the Presbytery a suspensive appeal of both the summary judgment and the order. Carrollton contends that this court lacks appellate jurisdiction to consider the order at this time, as it is interlocutory and unrelated to the merits of the final judgment appealed. The Presbytery argues that the order constitutes a final judgment under La.Code Civ. Proc. Ann. art. 1915 A(6), which provides for the finality of judgments imposing sanctions or disciplinary action pursuant to La.Code Civ. Proc. Ann. arts. 191, 863, or 864 and La.Code Evid. Ann. art. 510 G.
The order does not purport to be a judgment imposing sanctions or disciplinary action pursuant to La.Code Civ. Proc. Ann. arts. 191, 863, or 864, or La.Code Evid. Ann. art. 510 G. Rather, the order holds a party in contempt and orders that party to pay an unspecified amount. We do not find that this falls under the rubric of La.Code Civ. Proc. Ann. art. 1915 A(6). See Succession of Bell, 06-1710 (La.App. 1 Cir. 6/8/07); 964 So.2d 1067, 1072.
The order is interlocutory since it does not determine the substantive merits of the case and is not separately appeal-able. Succession of Bell, 964 So.2d at 1072. In general, when an unrestricted appeal is taken from a final judgment determinative of the merits, the appellant is entitled to seek review of all adverse and *979 prejudicial interlocutory judgments, in addition to the review of the final judgment. State ex rel. Div. of Admin., Office of Risk Mgt. v. National Union Fire Ins. Co. of Louisiana, 10-0689 (La.App. 1 Cir. 2/11/11); 56 So.3d 1236, 1242, writ denied, 11-0849 (La.6/3/11); 63 So.3d 1023. In the ease of a restricted Rappeal, an appellant may also appeal an interlocutory judgment involving the same or related issues. Id.
The appeal herein is restricted to the merits of the declaratory judgment and preliminary injunction. At the time this appeal was taken, Carrollton’s motion for sanctions remained outstanding.[3] Our review of the record convinces us that the order relates to the motion for sanctions, rather than to the merits of the declaratory judgment or permanent injunction. The documents at issue in the order were ordered to be produced after the merits of the declaratory judgment or permanent injunction were decided. Thus, we find that this interlocutory ruling is not subject to review on appeal of the unrelated judgment on the declaratory judgment and permanent injunction. Accordingly, the motion for partial dismissal is granted and appeal of the order is dismissed.
MOTION FOR SUMMARY JUDGMENT
The character of the underlying action herein is one for declaratory judgment and permanent injunction; however, the judgment before the court on appeal was rendered pursuant to a motion for summary judgment. Thus, our review is pursuant to the summary judgment standard. See La.Code Civ. Proc. Ann. art. 1877; Bonvillian v. State ex rel. Department of Insurance, 08-0591 (La.App. 1 Cir. 12/23/08); 5 So.3d 233, 235.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Bozarth v. State, LSU Medical Center/Chabert Medical Center, 09-1393 (La.App. 1 Cir. 2/12/10); 35 So.3d 316, 323. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to |7material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. Ann. art. 966 B; Bozarth, 35 So.3d at 323.
The burden of proof on a motion for summary judgment is on the moving party. If the moving party will not bear the burden of proof at trial on the matter that is before the court, the moving party’s burden is to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the burden shifts to the adverse party to prove that there are genuine issues of material fact by providing factual evidence sufficient to establish the ability to satisfy the evidentiary burden of proof at trial. La.Code Civ. Proc. Ann. art. 966 C(2).
A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute. Bozarth, 35 So.3d at 324. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen *980 only in light of the substantive law applicable to the case. Bozarth, 35 So.3d at 324; Saizan v. Pointe Coupee Parish School Bd., 10-0757 (La.App. 1 Cir. 10/29/10); 49 So.3d 559, 563, writ denied, 10-2599 (La.1/14/11); 52 So.3d 905.
The instant matter is a church property dispute. The First Amendment to the United States Constitution prohibits courts from resolving such disputes on the basis of religious doctrine and practice. Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Rather, we must employ “neutral principles of law,” examining certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. Fluker Community Church v. Hitchens, 419 So.2d 445, 447 (La.1982).
|8The Book of Order’s express trust provision, which the Presbytery contends applies to the subject property, is set forth in G-8.0201 as follows:
All property held by or for a particular church ... whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a particular church or of a more inclusive governing body or retained for the production of income, is held in trust nevertheless for the use and benefit of the [PCUSA],
Further, the Book of Order, G-8.0501, provides:
A particular church shall not sell, mortgage, or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance or condition without the written permission of the presbytery transmitted through the session of the particular church.
The same chapter of the Book of Order also contains an exception provision in G-8.0701:
The provisions of this chapter shall apply to all particular churches of the [PCUSA] except that any church which was not subject to a similar provision of the Constitution of the church of which it was a part, prior to the reunion of the Presbyterian Church in the United States and The United Presbyterian Church in the United States of America to form the [PCUSA], shall be excused from that provision of this chapter if the congregation shall, within a period of eight years following the establishment of the [PCUSA], vote to be exempt from such provision in a regularly called meeting and shall thereafter notify the presbytery of which it is a constituent church of such vote. The particular church voting to be so exempt shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the [PCUSA]. This paragraph may not be amended.
There is no dispute that Carrollton timely exercised its right to except as provided in G-8.0701.
Prior to the reunion referred to in G-8.0701, Carrollton was subject to The Book of Church Order of the Presbyterian Church in the United States (“PCUS”), which, in § 6-8, pertinently provided:
Nothing in this chapter shall be construed to require a particular church to seek or obtain the consent or approval of any chui'ch court above the level of the particular church in order to buy, sell or | ^mortgage the property of that particular church in the conduct of its affairs as a church of the PCUS.
*981 Apparently inconsistent was § 6-3, which purported to create a trust over church property, stating:
All property held by or for a particular church, whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church in the United States.
The Presbytery has advanced the argument that, even if Carrollton is not subject to the express trust provision of the Book of Order, it would still be subject to the express trust provision of the Book of Church Order. However, G-8.0701 allows a church to be excused from a provision in that chapter of the Book of Order that is not substantially similar to a provision of its prior governing constitution. As the two purported express trust provisions in the Book of Order and Carrollton’s prior governing constitution (The Book of Church Order) are substantially similar, this could only mean that G-8.0701 provided Carrollton a means of opting out of G-8.0501, which requires the presbytery’s authorization to sell, mortgage, or encumber property, since that provision is in sharp contrast to § 6-8 of The Book of Church Order, which allowed a church to buy, sell, or mortgage “property of that particular church.” As the district court recognized in written reasons for issuance of a preliminary injunction, “the unfettered right to dispose of all of one’s property is mutually exclusive of any right by a third party to dictate the disposition of that same property.” In other words, in allowing Carroll-ton to fall back on § 6-8, G-8.0701 negated any express trust as provided by G-8.0201.
Moreover, we agree with both Car-rollton and the district court that, even if we were not persuaded that Carrollton is exempt from the Book of Order’s express trust provision, Louisiana trust law would apply to this dispute over Louisiana property. In Jones v. Wolf, 443 U.S. at 602, 99 S.Ct. 3020, the United States Supreme Court recognized a state’s “obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively.” The Court went on to note that application of the neutral-principles approach “relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges.” Jones, 443 U.S. at 603, 99 S.Ct. 3020. Although the Court opined that a trust in favor of a general church could be created by the constitution of the general church being made to recite an express trust provision in favor of the denominational church, the Court noted “the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.” Jones, 443 U.S. at 606, 99 S.Ct. 3020 (emphasis added). We are not persuaded by the Presbytery’s contention that the requirement of a “legally cognizable form” was met simply by the PCUSA’s amending its constitution.
The subject property is situated in Louisiana, and, applying neutral principles of law, we find that any purported trust would be subject to the form requirements set forth in Louisiana’s Trust Code.[4] It is undisputed that those form requirements have not been met. The public records relating to the subject property reflect that the property is owned by Carrollton. *982 There is no mention of the property being held in trust in the deeds themselves and it is not disputed that no trust instrument relating to the property has been filed of record in Orleans Parish. See La.Rev. Stat. Ann. § 9:2092.
The Presbytery has also advanced the argument that Carrollton was actually in the process of dissolving, thereby invoking the Book of Order, G-8.0301, which provides:
|n Whenever property of, or held for, a particular church of the [PCUSA] ceases to be used by that church as a particular church of the [PCUSA] in accordance with this Constitution, such property shall be held, used, applied, transferred, or sold as provided by the presbytery.
The record is clear that Carrollton’s church population had declined and Car-rollton was seeking to sell the property it held. However, the record evidence does not create a genuine issue of material fact as to whether Carrollton was in the process of dissolving. The deposition testimony of Reverend Cutter, who was at the time of his deposition the General Presbyter of the Presbytery, explained that dissolution is a long, drawn-out process and that there was no formal request from Carrollton that it be dissolved. Reverend Roeling, treasurer of the Presbytery, also attested to there being no petition for dissolution by Carrollton and that Carrollton was a part of the PCUSA. Although the record contains references to talk of dissolution, we are not persuaded that there is a genuine issue of material fact as to Car-rollton being in the process of dissolving, so as to invoke G-8.0301 and grant the Presbytery control over any sale of the property.
After examining the governing religious documents with an attitude of neutrality, as we are mandated, we find that summary judgment was appropriately granted as to the declaratory judgment.
We turn now to the Presbytery’s assertion that the permanent injunction issued by the district court unconstitutionally inhibits the free exercise of religion by the Presbytery. The Presbytery’s complaint is limited to its position that the grant of injunctive relief unconstitutionally entangled the court in matters of church governance. The Presbytery does not contend that the injunctive relief was otherwise improperly granted.
The Presbytery specifically complains about language contained in the February 13, 2009 TRO issued by the district court. However, the TRO has since expired. See La.Code Civ. Proc. Ann. art. 3604. Although noting that both the | ^preliminary and permanent injunctions include language restricting the stated prohibitions to the property and subject matter of this lawsuit, the Presbytery contends the injunctions are merely superficial alterations of the TRO such that they continue to exceed the jurisdiction of the district court.
Preliminary injunctions merge into and are superseded by permanent injunctions. Mount Gideon Baptist Church, Inc. v. Robinson, 01-0749 (La.App. 1 Cir. 2/15/02); 812 So.2d 758, 762, writ denied, 02-1229 (La.6/21/02); 819 So.2d 1024; Green v. Champion Ins. Co., 577 So.2d 249, 260 (La.App. 1 Cir.), writ denied, 580 So.2d 668 (La.1991). Thus the parties are now controlled by the permanent injunction, set forth in the judgment on appeal as follows:
IT IS FURTHER ORDERED that a Permanent Injunction be and it is hereby issued against the Presbytery of South Louisiana of the Presbyterian Church (USA), its officers, agents, employees, and counsel, and any persons or entities in active concert or participation *983 with the Presbytery, or acting by or through the Presbytery or on its behalf or in its stead. This Permanent Injunction pertains to all Property held by or for Carrollton Presbyterian Church, both immovable (real) together with all buildings and improvements thereon, and movable (personal), whether corporeal or incorporeal, wherever located, whether held by, for or in the name of Carrollton Presbyterian Church of New Orleans or its successor corporation Carrollton Presbyterian Church (collectively “Personal and Real Property”), which immovable Property is more particularly described in Attachment “A” hereto. The Presbytery is enjoined from filing any documents in the mortgage and conveyance records of Orleans Parish to assert ownership, use or control, or rights to determine ownership, use or control, to any immovable Property titled in the name of the Carrollton Presbyterian Church or to assert a trust on behalf of the Presbytery or other affiliated third party over immovable Property titled in the name of Carrollton Presbyterian Church, or otherwise held by or for Carrollton Presbyterian Church, the effect of which would be to place a cloud on the title of said immovable Property, or otherwise interfere with or disturb Plaintiffs ownership, use, control, or disposition of Plaintiffs Personal or Real Property, or interfere with Plaintiffs right to determine the ownership, use, control, or disposition of Personal or Real Property held by or for Carrollton Presbyterian Church or held in the possession of, control of, or owned by or titled in the name of Carrollton Presbyterian Church.
IT IS FURTHER ORDERED that the Presbytery of South Louisiana of the Presbyterian Church (USA), and any persons or entities in active concert or participation with it, on its behalf or in its stead, whether acting directly or indirectly, are permanently enjoined 113from taking any action that could affect the property rights of Carrollton Presbyterian Church, including but not limited to: 1) seeking to change the locks of Car-rollton Presbyterian Church; 2) initiating any disciplinary or other retaliatory action against the employees, officers, ministers or members of Carrollton Presbyterian Church which directly or indirectly arises from or is connected to any property issue raised in, prompted by, or related to the subject matter of this litigation; 3) dissolving Carrollton Presbyterian Church or appointing or initiating processes leading to the appointment of an administrative commission to assert original jurisdiction, directly or indirectly, over Carrollton Presbyterian Church in order to assume or effect control over the ownership, use, or disposition of the Personal or Real Property; or, 4) otherwise interfering with the normal duties and responsibilities of the officers, ministers, and employees of Carrollton Presbyterian Church, the governing body of Plaintiff (the session), or the board of trustees (the governing body of Plaintiff) or any designees thereof in any way that pertains to the ownership, control, use, or disposition of the Personal or Real Property held by, for or in the name of Carrollton Presbyterian Church, which claims to Plaintiffs Personal and Real Property are fully adjudicated herein, as reflected by this Final Declaratory Judgment.
Nothing in this Permanent Injunction shall preclude the Presbytery from taking ecclesiastical action for non-pretex-tual ecclesiastical cause that is unrelated to this litigation or any property issue raised in, prompted by, related to, or affecting the ownership, control, use, or *984 disposition of the Personal or Real Property held by, for or in the name of Carrollton Presbyterian Church.
The Presbytery contends that the prohibitions against disciplinary actions and dissolution (or appointment of an administrative commission) “strike at the very heart of the internal governance of the PCUSA and, specifically, the powers granted to the Presbytery by the Book of Order.”
We reiterate that the courts of this state have jurisdiction to adjudicate church property disputes. See Fluker Community Church, 419 So.2d at 447. However, courts must be mindful not to overreach their jurisdiction and become entangled in questions of church doctrine. Washington v. James, 42,345 (La.App. 2 Cir. 8/15/07); 962 So.2d 1154, 1159.
In written reasons for issuing the preliminary injunction, the district court stated:
Even assuming that Carrollton could not show a deprivation of a constitutional right, there is also evidence that the congregation’s missions and ministries would be irreparably harmed without the luissuance of the injunction. Perhaps the best evidence of this looming hardship is the synod[’s] administrative commission’s unilateral decision to dissolve Carrollton in an effort to terminate its existence.
[[Image here]]
I have concluded that the balance of hardships tilts in favor of the congregation. Without the injunction, Carrollton may very well cease to exist. This is simply not the case for [the Presbytery]. [The Presbytery’s] argument that the congregation will be able to appeal any decision of the synod also rings hollow. It was the synod, after all, that acted to dissolve Carrolton in the first place.
[[Image here]]
[The Presbytery’s] argument that a civil court has no business resolving the present dispute echoes its position that this court lacks subject matter jurisdiction. I have already rejected this argument. [The Presbytery] has consistently attempted to reframe this entire case as a fight over ecclesiastical principles and hierarchical discipline. These issues are peripheral, however, and do not preclude the availability of relief from this court. Far from disserving the public interest and entangling the court in religious matters, the issuance of the injunction will ensure that litigants on both sides of this issue are able to resolve complex property disputes before a neutral body, just as the Fluker court required.
Having carefully considered this matter, we find no unconstitutional breach by the district court. The injunctive relief is narrowly focused and restricted to actions affecting the property that is the subject matter of this litigation. Contrast Thompson v. Bank One of Louisiana, 05-1101 (La.App. 4 Cir. 1/11/06); 925 So.2d 555; writ denied, 06-0321 (La.4/28/06); 927 So.2d 288 (holding that a court-ordered permanent reinstatement of a particular pastor of a church would, under the circumstances presented, violate the Constitutional principle of separation of church and state found in the First Amendment to the United States Constitution, which has been interpreted to forbid courts from interfering with ecclesiastical matters of religious groups). The prohibited actions enumerated in the injunction are specifically limited to instances affecting the instant church property dispute. Thus, we find no error.
CONCLUSION
For the foregoing reasons, the rule to show cause issued by this court on Febru *985 ary 17, 2011, is recalled. The motion for partial dismissal filed by Carrollton | l5is granted. The appeal of the judgment of December 4, 2009, is maintained, and the appeal of the order of December 4, 2009, is dismissed. The judgment of December 4, 2009, is affirmed. Costs of this appeal are assessed to the Presbytery of South Louisiana of the Presbyterian Church (USA).
RULE TO SHOW CAUSE RECALLED; MOTION FOR PARTIAL DISMISSAL GRANTED; APPEAL MAINTAINED AS TO JUDGMENT OF DECEMBER 4, 2009; APPEAL DISMISSED AS TO ORDER OF DECEMBER 4, 2009; JUDGMENT OF DECEMBER 4, 2009 AFFIRMED.
PARRO, J., concurs.

. The "session” is the governing body of the local church.

. After this court issued the rule to show cause, Carrollton advanced the argument that the timely filed order of appeal could not be considered, because it was filed into the record by Carrollton and not by the Presbytery. Additionally, Carrollton pointed out that the suspensive appeal bond was not filed within the delay provided by La.Code Civ. Proc. Ann. art. 2123. However, Carrollton did not file a motion to dismiss the suspensive appeal within three days of the return date or lodging, as required by La.Code Civ. Proc. Ann. art. 2161. Accordingly, the suspensive appeal is not invalid for these reasons. See Wright v. Jefferson Roofing, Inc., 93-1217 (La.1/14/94); 630 So.2d 773, 776.

. Carrollton represented in brief and again at oral argument that the matter is currently under advisement by the district court.

. Further, we note that in Jones, 443 U.S. at 609, 99 S.Ct. 3020, the Supreme Court con-eluded that it was not declaring what the law of Georgia was.