DRAKE, J.
| ¡Appellant, the Presbytery of South Louisiana of the Presbyterian Church (U.S.A.), (“Presbytery”) appeals a judgment for sanctions against it in favor of Carrollton Presbyterian Church (“Carroll-ton”). Based on our review of the record, we affirm the trial court’s judgment.

FACTS AND PROCEDURAL HISTORY

Carrollton first organized as a church in 1855, but membership declined due to the Civil War. In 1884, Carrollton reorganized, and thereafter, incorporated as a Louisiana corporation in 1894 with the right to buy and sell property. In 1983, the Presbyterian Church (U.S.A.) (“PCU-SA”) was formed by the reunion of the United Presbyterian Church in the United States of America (northern branch) and *3 the Presbyterian Church in the United States (southern branch) (“PCUS”). Prior to the reunification, Carrollton was established as place of worship in accordance with the “usages and doctrines” of the PCUS. The PCUSA is governed by representative bodies called, in order of rank, the lowest to the highest, “session, presbytery, synod, General Assembly.” The Book of Order sets forth the rules for the reunited church and its local members, Chapter 8 of the Book of Order contains the provisions of the church constitution governing property. Section G-8.0201 of the Book of Order contains the express trust provision:
All property held by or for a particular church ... whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a particular church or of a more inclusive governing body or retained for the production of income, is held in trust nevertheless for the use and benefit of the [PCUSA].
Section G — 8.0501 of the Book of Order provides:
A particular church shall not sell, mortgage, or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance or condition without the written permission of the presbytery transmitted through the session of the particular church.
| .^Section G-8.0701 of the Book of Order permitted a local church within eight years of the reunification of the northern and southern churches in 1983 to opt out of the provisions of chapter 8 and provides:
The particular church voting to be so exempt shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the .[PCUSA]. This paragraph may not be amended.
Carrollton timely exercised its right to opt out of chapter 8 as provided in G-8.0701 at a congregational meeting on July 8,1984.
Prior to the reunion of the northern and southern branches of the Presbyterian Church, Carrollton was subject to the Book of Church Order (different from the Book of Order) of the southern branch, the PCUS, which provided in Section 6-8 that a local church did not need the consent or approval of any “church court above the level of the particular church in order to buy, sell or mortgage the property of that particular church.” On February 19, 2008, the Presbytery adopted a position statement “as the definitive statement on how this Presbytery, interprets the Book of Order with respect to real property.” The position statement recognized:
[T]hat those churches which exercised the property exemption (G-8.0701) that was available in the eight-year window after reunion ... have the ability to buy, sell, lease, mortgage, or otherwise encumber any of their real property without further permission of the presbytery.
On March 27, 2008, Carrollton filed a Petition for Declaratory Judgment against the Presbytery, seeking a declaration that all property held by or for Carrollton was held without any trust in favor of a national denomination or any of its regional administrative units; that all property held or titled in Carrollton’s name is held by it in full and exclusive ownership; and that neither the national denomination nor a regional administrative unit has any right, title or interest in said property nor the right to determine the ownership or disposition of said |4property. Carrollton later amended its petition on February 13, 2009, *4 to further seek injunctive relief restraining the Presbytery from filing any documents or otherwise taking any action to claim or assert ownership, use, or control over Car-rollton’s property or to assert any rights to Carrollton’s property.
The underlying facts prompting the petitions and the ensuing proceedings in the trial court were discussed in Carrollton Presbyterian Church v. Presbytery of S. Louisiana of Presbyterian Church (USA), 11-0205 (La.App. 1 Cir. 9/14/11), 77 So.3d 975, 976-77, writ denied, 11-2590 (La.2/17/12), 82 So.3d 285, cert. denied, — U.S. -, 133 S.Ct. 150, 184 L.Ed.2d 32 (2012), as follows:
Over the course of years, Carrollton acquired property in its name, including the immovable property in New Orleans that is the site of Carrollton’s sanctuary. Carrollton also sold property it held in its name. In recent years Carrollton’s membership had declined, and there was some talk of Carrollton dissolving, although Carrollton did not formally petition to do so. Carrollton also began investigating a potential sale of its sanctuary property.
The declaratory judgment portion of this dispute raises the issue of whether Carrollton holds, in full and exclusive ownership, property held in its name, and therefore, may sell its property as it desires. The Presbytery maintains that Carrollton is subject to the Book of Order’s express trust provision, which creates an express trust in church property in favor of the PCUSA. Carrollton argues that the trust provision of the Book of Order does not comply with Louisiana trust law and further contends that the provision is inapplicable here, as Carroll-ton timely exercised its option to exempt itself from the trust provision.
After Carrollton amended its petition, the district court granted a temporary restraining order (“TRO”) prohibiting the Presbytery from establishing an administrative commission to take jurisdiction over Carrollton’s “session.” [1] After finding that Carrollton set forth a prima facie showing that it would prevail on the merits of the suit, the district court issued a preliminary injunction effective against the Presbytery and pertaining to all property held by or for Carrollton, enjoining the Presbytery from filing documents in the mortgage and conveyance records of Orleans Parish that would create a cloud on Carrollton’s title to its property, or interfering with Carroll-ton’s right Into determine ownership, use, control, or disposition of its property. The preliminary injunction further enjoined the Presbytery from: changing the church locks; • initiating disciplinary action against Carrollton’s ministers or members in relation to the subject matter of this litigation; dissolving Carroll-ton or appointing or initiating processes leading to appointment of an administrative commission to assert jurisdiction over Carrollton to assume control over its governance of or control of the subject property; or iñterfering with Car-rollton in any way pertaining to ownership, control, use, or disposition of church property.
The district court then granted Car-rollton’s motion for summary judgment, declaring that all property held by, for, or in Carrollton’s name is held and owned by Carrollton, which holds and owns all property in its name in full, complete, and unfettered ownership in accordance with Louisiana law and further, that the express trust provisions relied on by the Presbytery are unenforceable and without legal effect as to *5 the subject property. Additionally, the district court issued a permanent injunction enjoining the Presbytery from asserting ownership, use, control, or a trust over any property titled in [ ] Car-rollton’s name and also from taking any action that could affect Carrollton’s property rights, which specifically included, but was not limited to, the actions enumerated in the preliminary injunction.
This court further stated:
The First Amendment to the United States Constitution prohibits courts from resolving such disputes on the basis of religious doctrine and practice. Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). Rather, we must employ “neutral principles of law,” examining certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. Fluker Community Church v. Hitchens, 419 So.2d 445, 447 (La.1982).
Carrollton Presbyterian Church, 77 So.3d at 980.
After examining the Book of Order’s provisions, this court determined that Car-rollton had exercised the right to opt out of the express trust provision and that Carrollton could dispose of the property it owned. Carrollton Presbyterian Church, 77 So.3d at 981. This court also determined that even if Carrollton was not exempt from the Book of Order’s express trust provisions, Louisiana trust law would apply to the dispute since the property was located in Louisiana. Id. This court noted that it was undisputed that the Louisiana Trust Code requirements were not met. Id.
1 BFurthermore, in discussing Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775, this court made the following observations:
In Jones v. Wolf 443 U.S. at 602, 99 S.Ct [at 3025], the United States Supreme Court recognized a state’s “obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively.” The Court went on to note that application of the neutral-principles approach “relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges.” Jones, 443 U.S. at 603, 99 S.Ct. [at 3025]. Although the Court opined that a trust in favor of á general church could be created by the constitution of the general church being made to recite an express trust provision in favor of the denominational church, the Court noted “the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.” Jones, 443 U.S. at 606, 99 S.Ct. [at 3027] (emphasis added).
Carrollton Presbyterian Church, 77 So.3d at 981.
This court was not persuaded by the Presbytery’s contention that the requirement of a “legally cognizable form” was met simply by the PCUSA’s amending its constitution. Id.
This court affirmed the summary judgment as to the declaratory relief granted to Carrollton. Id. at 982. Both the Louisiana Supreme Court and the United States Supreme Court denied the Presbytery’s application for certiorari. Carrollton Presbyterian Church v. Presbyterian of South Louisiana of Presbyterian Church (USA), 11-2590 (La.2/17/12), 82 So.3d 285, cert. denied, — U.S. -, 133 S.Ct. 150, 184 L.Ed.2d 32 (2012). Prior to the appeal of the summary judgment, Car-rollton filed a motion for sanctions against the Presbytery for ignoring facts known to *6 it or that were readily ascertainable and for advancing “preposterous legal arguments.” The original motion for sanctions was filed on July 17, 2009, with related motions for sanctions being filed on July 20, 2009, and August 20, 2009.
|7The trial court held a hearing on the request for sanctions on May 17, 2010.[2] The Presbytery argued that actions, which sought to change existing law, to set new law, or which were a different argument contrary to the other side, were not sanc-tionable as long as the arguments were grounded in good faith. At the hearing, Carrollton asserted that pursuant to the Book of Order, it had exercised an exemption to sell its own property. Carrollton argued that the cases of Jones and Fluker had already determined that the deeds, charter, state statutes, and constitution of the general church were to be reviewed in property disputes. Furthermore, Carroll-ton had previously sold property to its' neighbor, just as it sought to do in the underlying case, without objection from the Presbytery. Therefore, Carrollton’s position was that the Presbytery had no reasonable argument to oppose the sale of the property and only did so for the purpose of causing expense and delay. The trial court took the matter under advisement.
On February 9, 2011, Carrollton filed a motion for leave to submit proposed written findings and reasons for judgment imposing sanctions. The Presbytery filed its own motion for leave to submit proposed written findings and reasons for judgment on Carrollton’s motion for sanctions on April 12, 2011. On July 18, 2013, the trial court adopted the proposed written findings of fact and reasons for judgment on the issue of sanctions submitted by Car-rollton. On August 21, 2013, the trial court signed a judgment awarding sanctions against the Presbytery, and in favor of Carrollton, in the amount of $390,000.00. It is from this judgment that the Presbytery appeals.[3]

DISCUSSION

The Presbytery claims that the trial court erred in imposing sanctions under La.' C.C.P. art. 863, erred in imposing sanctions on a represented party that did not | Ssign any pleadings, and alternatively, in imposing grossly excessive sanctions in the amount of $390,000.00.

Written Reasons for Judgment

The Presbytery notes that the written reasons for judgment in this matter are not the inner thoughts of the trial court, but those of opposing counsel which were adopted by the trial court. We previously stated in Bell v. Ayio, 97-0534 (La.App. 1 Cir. 11/13/98), 731 So.2d 893, 896 (quoting Miller v. Smith, 391 So.2d 1263, 1265 (La.App. 1 Cir.1980), affirmed on other grounds, 402 So.2d 688 (La.1981)):
When reasons are provided, a reviewing court must be assured that the' thinking process was that of the judge and not an advocate in the lawsuit. It is one thing for victorious counsel to prepare a judgment comprised of the stark, final determinations of a case. It is quite another for a counsel to present as the inner thoughts of a judge what amounts to a well-written brief.
As noted in Bell, “this court cannot place any real value on the written reasons presented when they are drafted in their en *7 tirety by counsel for one of the parties.” Bell, 731 So.2d at 896. However, if there is evidence in the record supporting those reasons, this court does not have to reject them totally. See Bell, 731 So.2d at 896.
The trial court did issue written reasons with regard to the preliminary injunction granted to Carrollton. In doing so, the trial court expressed that Carrollton had timely exercised the exemption provided by Section G-8.0701 of the Book of Order and that Section 6-8 of the Book of Church Order recognized Carrollton’s ability to buy, sell, or mortgage its property with only the approval of the congregation, without.any permission from the Presbytery. The trial court also expressed that the minimum requirements of the Louisiana Trust Code were not followed by the statement added to the Book of Order, which attempted to create an express trust. Finally, the trial court stated:
19[The Presbytery’s] argument that a civil court has no business resolving the present dispute echoes its position that this court lacks subject matter jurisdiction. I have already rejected this argument. [The Presbytery] has consistently attempted to reframe this entire case as a fight over ecclesiastical principles and hierarchical discipline. These issues are peripheral, however, and do not preclude the availability of relief from this court.
Therefore, we do not totally reject the written reasons adopted in this matter, but we are mindful that they are not the inner thoughts of the trial court.

Sanctions

The Presbytery argues that sanctions were inappropriate pursuant to La. C.C.P. art. 863, since the provisions are implicated by the signing of pleadings by counsel or a party, not other documents. See Red Stick Studio Dev. v. Dept. of Econ. Development, 09-1349 (La.App. 1 Cir. 4/8/10), 37 So.3d 1029, 1035, writ denied, 10-1501 (La.10/1/10), 45 So.3d 1102. Louisiana Code of Civil Procedure article 863 provides, in pertinent part:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.
-to * * *
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred be *8 cause of the filing of the pleading, including reasonable attorney fees.
Despite the argument of the Presbytery, La. C.C.P. art. 863(D) permits a court to sanction either the attorney who made the certification or the represented party, or both, if the trial court determines that a certification was made in violation of La. C.C.P. art. 863(B). Therefore, the trial court had the right to sanction the Presbytery.
Louisiana Code of Civil Procedure article 863 imposes an obligation on litigants and their attorneys to make an objectively reasonable inquiry into the facts and law; subjective good faith will not satisfy this duty of reasonable inquiry. Connelly v. Lee, 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, 414, writ denied, 97-2825 (La.1/30/98), 709 So.2d 710. The article does not empower a trial court to impose sanctions simply because a particular argument or ground for relief is subsequently found to be unjustified; failure to prevail does not trigger an award of sanctions. Louisiana Code of Civil Procedure article 863 is intended to be used only in exceptional circumstances; where there is even the slightest justification for the assertion of a legal right, sanctions are not warranted. Tubbs v. Tubbs, 96-2095 (La.App. 1 Cir. 9/19/97), 700 So.2d 941, 945. A trial court’s determination regarding the imposition of sanctions is subject to the manifest error or clearly wrong standard of review. Once the trial court finds a violation of La. C.C.P. art. 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the abuse of discretion standard. Stroscher v. Stroscher, 01-2769 (La.App. 1 Cir. 2/14/03), 845 So.2d 518, 526 (citing Connelly, 699 So.2d at 414).
| nThis court has held that La. C.C.P. art. 863 applies to the signing of pleadings, motions, and other papers, imposing upon attorneys and litigants affirmative duties as of the date a document is signed. SWC Services, LLC v. Echelon Const. Services, LLC, 10-1113 (La.App. 1 Cir. 2/11/11), 56 So.3d 1254, 1257; Tubbs, 700 So.2d at 944 (citing Sanchez v. Liberty Lloyds, 95-0956 (La.App. 1 Cir. 4/4/96), 672 So.2d 268, 271, writ denied, 96-1123 (La.6/7/96), 674 So.2d 972). Therefore, we reject the argument of the Presbytery, based on cases from other circuits, that La. C.C.P. art. 863 applies only to the signing of pleadings and not other documents.
It is unclear from the judgment whether sanctions were imposed pursuant to La. C.C.P. art. 863- or the trial court’s inherent power contained within La. C.C.P. art. 191 that authorizes trial courts to impose sanctions for any behavior which clearly interferes with the court’s ability to fairly administer justice. See Carter v. HI Nabor Super Market, LLC, 13-0529 (La.App. 1 Cir. 12/30/14), 168 So.3d 698, 704. Specifically, La. C.C.P. art. 191 provides that a trial court “possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law.” A determination as to what sanction is appropriate in a particular case is a matter within the province of the trial court, depending upon the facts present. As with other evidentiary and discovery rulings, the trial court has much discretion in deciding what sanction, if any, to impose. Carter, 168 So.3d at 704.
The inability — or-even the failure — of a court to reasonably enforce its judgments, orders, or directives would render them mere words on paper. Thus, our law necessarily affords trial judges great discretion and power over the control of proceedings in their respective courtrooms: “The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious *9 manner, and to control the proceedings at the trial, so that justice is []2done.” La. C.C.P. art. 1631; Show and Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church, 14-0843 (La.App. 4 Cir. 12/17/14), 156 So.3d 1234, 1238. The trial court had the authority to issue sanctions pursuant to either La. C.C.P. arts. 863 or 191.
In its original motion for sanctions, Car-rollton sought sanctions for a violation of a TRO by the Presbytery through the actions of the Synod of the Sun (the Synod), an entity that is a higher governing authority over the Presbytery in the structure of the PCUSA. The Synod formed an administrative commission known as the Synod AC, which the Presbytery admitted had a “shared, common interest” with respect to the property dispute between Car-rollton and the Presbytery. Carrollton complained that the TRO was violated by the Synod’s attempt to dissolve Carrollton and to allow the Presbytery to sell the disputed property. The trial court signed a TRO on February 13, 2009, which was effective against the Presbytery, “its officers, agents, employees, and counsel, and any persons in active concert or participation with it, on its behalf or in its stead.” The TRO restrained the persons listed above from taking any actions to affect the property rights of Carrollton. The TRO was extended until March 5, 2009, by a court order signed February 19, 2009.[4] The Synod AC voted on February 25, 2009, and mailed a letter to Carrollton on February 26, 2009, to dissolve Carroll-ton and distribute is assets in violation of the TRO. The Synod AC, acting on behalf of the Presbytery, stated:
_L$Since currently the [Presbytery] is unable to act, the Synod AC, in support of the [Presbytery], took this action in order to accomplish the stated ends of the Carrollton Session and the [Presbytery].
The motions for sanctions filed by Car-rollton on July 20, 2009, and August 20, 2009, dealt with discovery issues. Carroll-ton claimed that the discovery sought was not material, to any legal issue before the court and was being used as a strategy to defeat summary judgment by claiming there were unknown material facts since discovery was not complete. Carrollton claimed that all material facts had already been stipulated, including ■ that in 1984, Carrollton timely voted to exercise the exemption provision of Section G-8.0701 of the Book of Order. Carrollton also claimed that prior to September 2008, the Presbytery recognized that churches like Carrollton, which had timely exercised the exemption of Section G-8.0701 of the Book of Order, could buy, sell, or mortgage their property without the permission of any governing body. The Presbytery agreed that it was undisputed that Carrollton had exercised the exemption, but disputed the “effect” of such exercise.
At the hearing on the motion for sanctions, the Presbytery framed the two aspects of the motion as whether there was a violation of the TRO and whether from the beginning of the litigation, had the Presbytery “asserted spurious arguments throughout the litigation, distorted the case law and advanced no good faith argument....” The Presbytery has maintained throughout the litigation that it *10 sought to change existing law and had an argument that differed with Carrollton.
After a thorough review of the record, we find the trial court did not commit manifest error in awarding sanctions against the Presbytery, whether the sanctions were granted pursuant to La. C.C.P. art. 863 or La. C.C.P. art. 191. The Presbytery clearly violated the TRO by the actions of the Synod AC. In an email dated June 17, 2009, Dr. Alan Cutter, the Presbytery general presbyter, discussed that the Synod was not named in this suit, but that no one from the Synod should appear in |14court “lest they be put in jail for contempt of court!” There is no doubt that the Presbytery, through the actions of “persons in active concert or in active participation with it, on its behalf or in its stead” violated the TRO, which resulted in the unnecessary delay or needless increase in the cost of litigation. In oral reasons for judgment on a motion to compel, the trial court stated:
During the hearing which was conducted on the preliminary injunction ... testimony came to the court’s attention that, in fact, information of the T.R.O. that this court had issued was given to the Synod, and they were aware of it, and despite the fact that I had a legal order in place that just affected the property, the church as to its ownership to the property, the Synod came in and dissolved Carrollton Presbyterian Church.
The trial court also noted:
“[T]he Synod was aware of this court’s order and just decided they were not going to pay any attention to it. Maybe that is why they did not want to be a party to it, because they wanted to dissolve Carrollton.”
The trial court considered the actions of the Synod to be a “slap in the face” to the court.
In addition to the violation of the TRO, the Presbytery argues that it was not “without the slightest justification” in defending the underlying litigation and arguing that Jones supported its position. In Jones, the question presented was whether civil courts, consistent with the First and Fourteenth Amendments to the Constitution, could resolve the dispute on the basis of “neutral principles of law,” or whether they must defer to the resolution of an authoritative tribunal of the hierarchical church. Id. at 597, 99 S.Ct. at 3022. The United States Supreme Court stated:
There can be little doubt about the general authority of civil courts to resolve this question. The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively.
It is also clear, however, that “the First Amendment severely circumscribes the role that civil courts may play in resolving church | ^property disputes.” Most importantly, the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice. As a corollary to this commandment, the Amendment requires that civil courts defer to the resolution of issues' of religious doctrine or polity by the highest court of a hierarchical church organization. Subject to these limitations, however, the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, “a State may adopt any one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.”
*11 Id. at 602, 99 S.Ct. at 3024-25 (citations omitted).
The Louisiana Supreme Court addressed the issue of church property disputes in Fluker and stated, “the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice.” 419 So.2d at 446. The Louisiana Supreme Court adopted the “neutral principles of law” approach as set forth in Jones and described the approach as “involving consideration of the deeds, state statutes governing the holding of church property, the local church’s charter, and the general church’s constitution and laws,” Fluker, 419 So.2d at 447. Jones noted that “[t]he neutral-principles approach ... obviates entirely the need for an analysis or examination of ecclesiastical polity or doctrine in settling church property disputes.” 443 U.S. at 605, 99 S.Ct. at 3026.
Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.
Jones, 443 U.S. at 606, 99 S.Ct. at 3027.
The cases relied upon by the Presbytery for claiming that it was justified in opposing the sale of the property owned by Carrollton are distinguishable. In re Episcopal Church Cases, 45 Cal.4th 467, 485, 87 Cal.Rptr.3d 275, 198 P.3d 66, 76, cert. denied, 558 U.S. 827, 130 S.Ct. 179, 175 L.Ed.2d 41 (2009), used the “neutral principles of law” to determine that the general church owned the disputed property rather than the local church after examining the constitution and canons of the Episcopal Church. However, the court found an implied trust existed in Episcopal Church Cases because the denominational church had added a canon reciting an express trust in favor of the denominational church. Id. at 487, 87 Cal.Rptr.3d 275, 198 P.3d at 80-81. In the present matter, the Presbytery opposed the sale of the disputed property based upon the express trust clause of G-8.0201 of the Book of Order. (R. 499-519). But the Episcopal Church Cases also relied on a unique California statute, which converted California to a de facto deference jurisdiction and allowed hierarchical denominations to unilaterally impose trusts on local church property. Louisiana law does not permit trusts to be formed in such a manner. See generally La. R.S. 9:2271-2337.
We also find Presbytery of Greater Atlanta, Inc. v. Timberridge Presbyterian Church, Inc., 290 Ga. 272, 719 S.E.2d 446 (2011), cert. denied, — U.S. -, 132 S.Ct. 2772, 183 L.Ed.2d 638 (2012), to be distinguishable. In the present case, the Presbytery adopted a “definitive statement” on February 19, 2008, on the interpretation of the Book of Order recognizing that churches that had exercised the property exemption “have the ability to buy, sell, lease, mortgage, or otherwise encumber any of their real property without further permission of the presbytery.” Approximately a month later, when Car-rollton filed a petition for declaratory judgment, the Presbytery took the opposite position in all pleadings with the trial court. Timberridge relied upon a specific *12 Georgia statute and specific governing documents, which are not present in the instant matter. 290 Ga. at 277-88, 719 S.E.2d at 451-58.
We agree with the trial court, based on the entirety of the record, that the Presbytery did not make a reasonable inquiry before filing pleadings seeking to |17prohibit Carrollton from disposing of its own property. There are numerous emails and exhibits in the record that illustrate that the Presbytery sought to cause unnecessary delay or increase the cost of litigation in this matter. Even though the Presbytery acknowledges that church property disputes are not foreordained and that a trust must be in “some legally cognizable form,” the only form of trust that the Presbytery ever relied on was a statement added to the Book of Order. However, Carrollton was clearly exempted from that statement. Therefore, the Presbytery had not the “slightest justification” for arguing that a trust had been formed. The trial court was not manifestly erroneous in sanctioning the Presbytery.

Excessiveness of Sanctions

The trial court determined that the claims of the Presbytery were not well-grounded in fact. The trial court took into consideration the violation of the TRO by the Presbytery through the Synod AC and the entirety of the actions of the Presbytery in claiming it was attempting to change the law, when Carrollton was clearly excepted from the relied upon trust provision. Once the trial court finds a violation of La. C.C.P. art. 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the “abuse of discretion” standard. Connelly, 699 So.2d at 414 (citing Sanchez, 672 So.2d at 271).
Lloyd Lunceford, the attorney for Car-rollton, submitted an affidavit dated May 17, 2010, detailing the work performed, expertise required, and attorney’s fees and expenses in the amount of $390,975.57 for the work that he and his firm provided between February 23, 2009, and February 28, 2010. The legal services were for a TRO, a preliminary injunction, a permanent injunction, a declaratory judgment, an order of contempt, a denial of writs by this court, and a denial of | iSwrits by the Louisiana Supreme Court. The amount of services excluded most paralegal and law clerk time, which was donated.
The Presbytery stipulated as to the amount of the attorney’s fees and expenses, but did not stipulate as to the reasonableness of those fees and expenses. The trial court issued a judgment awarding Carrollton sanctions against the Presbytery in the amount of $390,000.00 plus interest.
Louisiana Code of Civil Procedure article 863 authorizes an award of “reasonable” and not necessarily actual attorney fees. The goal to be served by imposing sanctions is not wholesale fee shifting, but correction of litigation abuse. Dubois v. Brown, 01-0816 (La.App. 1 Cir. 5/10/02), 818 So.2d 864, 866-67, writ denied, 02-1654 (La.10/14/02), 827 So.2d 421. Four factors have evolved that must be considered in arriving at an appropriate sanction award. They are: (1) What conduct is being punished or is sought to be deterred by the sanction? (2) What expenses or costs were caused by the violation of the rule? (3) Were the costs or expenses “reasonable” as opposed to self-imposed, miti-gatable, or the result of delay in seeking court intervention? (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which [it] was imposed? Dubois, 818 So.2d at 867.
Applying these factors to the case before us, we find that the trial court sought to deter and punish conduct, that involved *13 ignoring the exemption which had been granted to Carrollton regarding the disposal of its property and attempting to dissolve Carrollton in violation of the trial court’s order by using a person other than the Presbytery for the pure purpose of “getting around” the TRO. The trial court found that the expenses and costs incurred by Carrollton in filing and obtaining the TRO; the preliminary injunction; the permanent injunction; the declaratory judgment; the order of contempt; the denial of writs by this court; and the denial of writs by the Louisiana Supreme Court, were reasonable. The trial |19court, in its discretion, determined that $390,000.00 was an adequate sanction under the facts of this case to achieve the purpose of La. C.C.P. art. 863.
After a thorough review of the record, we cannot say that the trial court abused its discretion in awarding the sanctions it did in this case or that the amount of sanctions awarded was unreasonable. The record supports the sanction imposed by the trial court, which was very close to the amount of attorney’s fees in the record. See Connelly, 699 So.2d at 417.

CONCLUSION

For the reasons set forth herein, the judgment of the trial court imposing sanctions on The Presbytery of South Louisiana of the Presbyterian Church (U.S.A.) is affirmed. Costs of the appeal are assessed to the appellant, The Presbytery of South Louisiana of the Presbyterian Church (U.S.A.).
AFFIRMED.

. The "session” is the governing body of the local church.

. The trial court also took up the issue of rescinding a permanent injunction, which is not the subject of this appeal.

. The Presbytery filed a motion for new trial on the issue of sanctions, which was denied on May 22, 2014.

. Louisiana Code of Civil Procedure article 3604 provides that a TRO “shall expire by its terms within such time after entry, not to exceed ten days, as the court prescribes.” The statute further provides that the TRO can be extended, for good cause shown, any time before its expiration, for one or moré periods not exceeding ten days each. In accordance with this statute, the trial court signed several extension orders, whereby the TRO remained in effect until the court signed an order granting Carrollton a preliminary injunction.