STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 1193
2022 CW 1270

ADVANCED BENEFIT CONCEPTS, INC.

VERSUS

BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH,
INC. & PREFERRED CARE SERVICES, INC.

*DATE OF JUDGMENT:* AUG 0 8 2023

ON REVIEW FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER 709719, SECTION 27

HONORABLE TRUDY WHITE, JUDGE

* * * * * *

Alesia M. Ardoin                                 Counsel for Plaintiff-Appellant
R. Gray Sexton                                   Advanced Benefits Concepts, Inc.
Baton Rouge, Louisiana

Timothy Stephen Babcock
Baton Rouge, Louisiana

Tedrick K. Knightshead
Baton Rouge, Louisiana

Renee C. Crasto                                  Counsel for Defendants-Appellees
J.E. Cullens, Jr.                                Blue Cross and Blue Shield of
Andree M. Cullens                                Alabama, Access Health, Inc., and
S. Layne Lee                                     Preferred Care Services, Inc.
Baton Rouge, Louisiana

Carl S. Burkhalter
Matthew J. Bowness
Harold William Bloom
Birmingham, Alabama

* * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**Disposition: MAY 20, 2022 JUDGMENTS REVERSED. WRIT GRANTED AND October 24, 2022
JUDGMENT REVERSED. REMANDED.**

**CHUTZ, J.**

Plaintiff-appellant, Advanced Benefits Concepts, Inc. (ABC), appeals the district court's judgment, granting a motion for summary judgment asserted by defendants-appellees, Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama (collectively Access Health),[1] and dismissing ABC's cause of action for breach of a lobbying contract based on a finding that the contract was a nullity. ABC also challenges, by writ and appeal, the district court's interlocutory judgments, overruling declinatory exceptions asserting objections of lack of subject matter jurisdiction. We reverse the interlocutory judgments and the grant of summary judgment and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2021, ABC initiated this litigation in district court, seeking to enforce a fee agreement it had entered into with Access Health, a written version of which the parties executed on June 1, 2019. According to the allegations of the petition, in the written fee agreement ABC agreed to "represent Access Health and help Access Health identify, establish, and enter business relationships and contracts with various [employer groups]," and Access Health agreed "to pay [ABC] $1.25 per month per employee covered under Access Health's contract with [employer groups] that [ABC] helped establish." The agreement expressly stated that it "shall be evergreen and remain in full force until the termination of all [employer groups contracts]." Thus, ABC averred that Access Health "agreed to pay [ABC] the fees until the termination of the contract between Access Health and the [employer group] [ABC] helped establish."

---

[1] In its petition, ABC alleged, and Access Health, Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama admitted in their respective answers, that Preferred Care Services, Inc. owns approximately 80% of Access Health's stock and that Blue Cross and Blue Shield of Alabama owns 100% of Preferred Care Services, Inc. For ease of reference where the three defendants acted in unity, we refer to them collectively as Access Health.

2

ABC further alleged that it helped Access Health establish and enter into a business relationship and contract with the State of Louisiana, Office of Group Benefits (OGB), through which Access Health agreed to provide the primary health care network and services to the OGB plan participants for a monthly capitation payment as evidenced by a contract between Access Health and OGB executed on May 9, 2019 (the OGB contract). Based on an application of the ABC and Access Health fee agreement, for its role in securing the OGB contract, ABC calculated Access Health owed a total fee of $6,930,000.00.[2] Access Health initially tendered payments to ABC, but discontinued those payments on December 1, 2020. ABC claimed entitlement to the remainder of the fees owed it under the fee agreement as well as the expenses it incurred.

Access Health answered ABC's lawsuit with a general denial and asserted a reconventional demand,[3] which sought an award for ABC's alleged unjust enrichment of fees Access Health paid that it averred were not owed to ABC under the written terms of the June 1, 2019 fee agreement because ABC had breached the contract.[4] On February 4, 2022, Access Health filed a supplemental and amended pleading, modifying its allegations in support of its reconventional demand. Recognizing that ABC was the lobbyist who represented Access Health in the establishment of a business relationship and contract with OGB and claiming that neither ABC nor its principal, Charles Calvi, were registered as lobbyists with the State of Louisiana, Access Health asserted that ABC and Calvi engaged in a

---

[2] The term of the OGB contract for which ABC alleged its fee was due began on July 1, 2019 and continued through June 30, 2022, with two one-year options for extensions through June 30, 2024. Based on the monthly fee of $144,375.00 that ABC averred it was owed, the total fee ABC claimed is for a period of 48 months.

[3] Preferred Care Services, Inc. and Blue Cross and Blue Shield of Alabama filed individual answers, generally denying ABC's claims, but did not file individual reconventional demands.

[4] Access Health alleged that a dispute arose between it and OGB, which resulted in an amendment of the May 9, 2019 OGB contract. Because the terms of the OGB contract were modified, retroactive to July 1, 2019, without ABC's participation, Access Health averred that ABC had no entitlement to any fees tendered after July 1, 2019 and breached the fee agreement by failing to reimburse Access Health for the payments.

3

misrepresentation that rendered the fee agreement between ABC and Access Health void. Access Health asked that the district court enter a judgment declaring the fee agreement was void and awarding the total amount of payments Access Health had tendered to ABC under the fee agreement as an alternative basis for unjust enrichment damages.

On March 8, 2022, ABC filed a declinatory exception of lack of subject matter jurisdiction and, in the alternative, a peremptory exception of prescription, directed at Access Health's reconventional demand for declaratory relief ordering that the fee agreement was void because neither ABC nor Calvi registered as a lobbyist with the State of Louisiana. On March 26, 2022, Access Health moved for summary judgment, seeking dismissal of ABC's cause of action for breach of contract on the grounds that the fee agreement was a nullity.

A hearing was held on April 27, 2022, after which the district court overruled ABC's exceptions of subject matter jurisdiction and prescription, and granted summary judgment in favor of Access Health, dismissing ABC's claim for breach of contract with prejudice. On May 20, 2022, the district court issued a written interlocutory judgment, overruling ABC's exceptions of lack of subject matter jurisdiction and prescription. It issued a second written judgment, granting summary judgment in favor of Access Health and dismissing ABC's cause of action for breach of contract expressly determining the judgment was final for the purpose of an immediate appeal.[5]

ABC filed a motion for new trial, which was ultimately set for a hearing on August 24, 2022. The district court denied the motion in a judgment signed on September 12, 2022, and on September 21, 2022, ABC suspensively appealed.

---

[5] The district court issued a third judgment on May 20, 2022, which denied as premature Access Health's motion for summary judgment on its reconventional demand seeking an unjust enrichment award for the amount of all the payments it had paid to ABC pursuant to the fee agreement that the district court had concluded was null. The parties have not appealed that judgment.

4

Prior to the hearing on and denial of ABC's motion for new trial, on June 29, 2022, Access Health amended the allegations of its reconventional demand a second time to add Calvi as a defendant-in-reconvention. Access Health averred that ABC acted as Calvi's alter ego and, therefore, Calvi was personally liable for the return of all payments Access Health had tendered under the alleged null fee agreement. Alternatively, Access Health claimed that as ABC's alter ego, Calvi was personally liable for ABC's alleged unjust enrichment of fees Access Health had paid that it asserted were not owed to ABC under the terms of the fee agreement. In response to Access Health's second amended reconventional demand, ABC and Calvi filed a declinatory exception of lack of subject matter jurisdiction on July 22, 2022.

During the pendency of suspensive appeal, on October 11, 2022, the district court held a hearing on ABC's exception of lack of subject matter jurisdiction. At the conclusion of the hearing, the district court overruled the exception from the bench. The district court issued a written judgment in conformity with its ruling on October 24, 2022. ABC subsequently filed a notice of intent to seek supervisory review, and ABC timely applied for a writ.[6] The writ was referred to our panel for disposition. See *Advanced Benefits Concepts, Inc. v. Blue Cross and Blue Shield of Alabama*, 2022-1270 (La. App. 1st Cir. 2/1/23) (unpublished writ action). Because the memorandum in support of the exception of lack of subject matter jurisdiction asserted by ABC on July 22, 2022 contains identical arguments to those ABC asserted in its March 8, 2022 pleading insofar as the lack of subject matter jurisdiction exception, our analysis and disposition of the appeal and the

---

[6] Since neither the notice of intent nor the district court order setting a return date was filed on behalf of Calvi, the writ application is only on behalf of ABC. See La. URCA Rule 4.2.

5

writ are the same.[7] Thus, we turn to the merits of the propriety of the district court's judgments on the exception of lack of subject matter jurisdiction.

## DISCUSSION

An objection to the lack of subject matter jurisdiction is raised by a declinatory exception. See La. C.C.P. art. 925(A)(6). The district court's determination of whether it has subject matter jurisdiction over a case is subject to de novo review. *Louisiana Environmental Action Network, Inc. v. Louisiana Department of Environmental Quality*, 2019-1551 (La. App. 1st Cir. 9/23/20), 314 So.3d 841, 848.

The Executive Branch Lobbying Act is set forth in La. R.S. 49:71-78.1. In La. R.S. 49:71, the legislature expressed the purpose of the Executive Branch Lobbying Act, declaring:

> [T]he operation of open and responsible government requires that the fullest opportunity be afforded to the people to petition their government for the redress of grievances and to express freely their opinions on actions of the executive branch. To preserve and maintain the integrity of executive branch action and state government, the legislature also declares it is necessary that the identity of persons who attempt to influence actions of the executive branch and certain expenditures by those persons be publicly disclosed.

To this end, the Executive Branch Lobbying Act requires that each lobbyist register with the ethics board (the Board) as soon as possible after employment as a lobbyist or after the first action requiring his registration as a lobbyist. See La. R.S.

---

[7] A judgment overruling an exception is generally considered interlocutory and not appealable. See La. C.C.P. arts. 1841 and 2083; *Ascension School Employees Credit Union v. Provost Salter Harper & Alford, L.L.C.*, 2006-0992 (La. App. 1st Cir. 3/23/07), 960 So.2d 939, 939-940. But in a restricted appeal like this one, which is limited to a review of the propriety of the summary judgment dismissal of ABC's cause of action based on an allegedly null contract, an appellant may seek review of interlocutory judgments involving the same or related issues to the judgment on appeal. See *Carrollton Presbyterian Church v. Presbytery of South Louisiana of Presbyterian Church (USA)*, 2011-0205 (La. App. 1st Cir. 9/14/11), 77 So.3d 975, 978-79, cert. denied, 133 S.Ct. 150, 184 L.Ed.2d 32 (2012). Because the issue of the district court's subject matter jurisdiction to issue a judgment declaring that the fee agreement is null is related to its summary judgment dismissal of ABC's breach of contract claim, ABC was entitled to review of the district court's May 20, 2022 judgment overruling its exceptions with its appeal.

49:74(A).[8] Importantly for purposes of this appeal, the Board "shall be responsible for the enforcement of provisions of [the Act]." See La. R.S. 49:78(A).

Although La. Const. art. V, sec. 1 provides that "[t]he judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article," pursuant to La. Const. art. V, sec. 16, *"[e]xcept as otherwise authorized by this constitution* ..., a district court shall have original jurisdiction of all civil and criminal matters." (Emphasis added.)

Article X, section 21 of the Louisiana Constitution provides such an exception to the general rule granting district courts original jurisdiction by authorizing the creation of a board as a tribunal of limited jurisdiction as follows:

> **The legislature shall enact a code of ethics** for all officials and employees of the state and its political subdivisions. **The code shall be administered by one or more boards** created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal. [Emphasis added].

The grant of exclusive jurisdiction of certain subject matters to the Board results in the subtraction of those matters from the district court's jurisdiction. See *Jones v. Board of Ethics for Elected Officials*, 96-2005 (La. 5/9/97), 694 So.2d 171, 172, on reh'g, 96-2005 (La. 6/20/97), 696 So.2d 549. A determination of the application or interpretation of the Executive Branch Lobbying Act is within the grant of exclusive jurisdiction of certain subject matter to the Board. See *In re Arnold*, 2007-2342 (La. App. 1st Cir. 5/23/08), 991 So.2d 531, 537; La. R.S. 49:78(A); and La. R.S. 42:1132(D). There are two limited exceptions: where there is either a challenge to the constitutionality of the provisions of the Executive Branch Lobbying Act or to the due process procedures employed by the Board.

---

[8] Each lobbyist shall electronically file with the Board his name and business address and the name and address of each person by whom he is employed and, if different, whose interests he represents, including the business in which that person is engaged. Additionally, the lobbyist shall disclose the name of each person by whom he is paid or is to be paid, the amount he is paid or is to be paid for the purpose of lobbying, and a characterization of such payment as paid, earned but not received, or prospective. The amounts required to be disclosed are reported by category of value. See La. R.S. 49:74(A).

See *Jones*, 694 So.2d at 173; *Duplantis v. Louisiana Board of Ethics*, 2000-1750 (La. 3/23/01), 782 So.2d 582, 592.

In its reconventional demand, Access Health requested that the district court issue a judgment declaring that the fee agreement between it and ABC was void pursuant to La. R.S. 49:78.1(B). La. R.S. 49:78.1 provides:

> A. No person shall enter into a contract to act in a representative capacity for the purpose of lobbying and fail to register or fail to file a supplemental registration providing the name and address of the person by whom he is employed or engaged and, if different, whose interests he represents pursuant to such contract as required by this Part.
>
> B. Any person who violates the provisions of Subsection A of this Section shall have engaged in a misrepresentation sufficient to defeat or void the contract such person entered into to act in a representative capacity for the purpose of lobbying. Any effort to register or to file a supplemental registration after any remedy or relief relative to such a violation is sought pursuant to any provision of law shall not be sufficient to reverse the misrepresentation.
>
> C. The [B]oard shall afford any person accused of violating Subsection A of this Section a hearing in accordance with the provisions of Part III of Chapter 15 of Title 42 of the Louisiana Revised Statutes of 1950. If the [B]oard finds that a person violated the provisions of Subsection A of this Section, the [B]oard shall order that the contract entered into for the purpose of lobbying by such person is void and the provisions thereof unenforceable.
>
> D. The provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law.

ABC contends that because the present litigation neither challenges the constitutionality of the Executive Branch Lobbying Act nor the due process procedures of the Board, the district court lacked subject matter jurisdiction to issue the requested relief Access Health sought in its reconventional demand: i.e., a judgment declaring the fee agreement between ABC and Access Health is null because, as set forth in La. R.S. 49:78.1, exclusive jurisdiction to do so lies with the Board.

Initially, we note that in *River Birch, Inc. v. Robin & Associates, Inc.*, 2004-1561 (La. App. 1st Cir. 6/15/05), 906 So.2d 729, writ denied, 2005-2201 (La. 2/10/06), 924 So.2d 176, this court examined the provisions of the Legislative Lobbying Act, see La. R.S. 49:50-59, which mirrors the Executive Branch Lobbying Act in seminal ways.[9] Under the provisions in effect at that time, the *River Birch* court determined that, because the Board's remedies to the imposition of penalties, there was no civil right of action under the Legislative Lobbying Act, and it upheld the district court's conclusion finding the fee agreement between the unregistered lobbyist and the principal he represented was valid. In reaching its conclusions, subject matter jurisdiction was presumed. *River Birch, Inc.*, 906 So.2d at 734-35.

But subsequently, in 2006, the legislature added La. R.S. 49:78.1 to the Executive Branch Lobbying Act, the provisions of which expressly provide that the failure of a lobbyist to register as required under the Executive Branch Lobbying Act constitutes "a misrepresentation sufficient to defeat or void [a contract to act in a representative capacity for the purpose of lobbying]," thereby empowering the Board with the authority to invalidate a lobbying contract for misrepresentations arising from the failure of a lobbyist to properly register. In light of the amendment, *River Birch* is not dispositive of the issue of subject matter jurisdiction and the parties' respective reliance on it is misplaced.

In support of its assertion that the district court has subject matter jurisdiction, Access Health focuses on the language of La. R.S. 49:78.1(D), which states, "The provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law." Access Health interprets Subsection D to allow relief and remedies for violations beyond the penalties

---

[9] Compare La. R.S. 24:53 & 24:58.1 (legislative lobbying) with La. R.S. 49:74 & 49:78.1 (executive branch lobbying).

9

imposed by the Board, thus, conferring jurisdiction on the district court to declare the fee agreement is void and its terms unenforceable. Access Health contends that if a hearing before the Board is the exclusive remedy for violations of La. R.S. 49:78.1, the entirety of subsection (D) must be ignored, in derogation of the jurisprudential presumption that every word, sentence, or provision in a statute was intended to serve some useful purpose, that some effect be given to each such provision, and that the legislature used no unnecessary words or provisions. See e.g., *Battaglia v. LeBlanc*, 2021-0011 (La. App. 1st Cir. 6/17/21), 328 So.3d 467, 470, writ denied, 2021-01025 (La. 11/3/21), 326 So.3d 886, citing *Boudreaux v. Louisiana Dep't of Pub. Safety and Corrs.*, 2012-0239 (La. 10/16/12), 101 So.3d 22, 26.

In *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08), 998 So.2d 16, 26-27, our supreme court explained:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.

> The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

> It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. It is

10

equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. [Internal citations and quotation marks omitted.]

La. R.S. 49:78, which provides for enforcement of the Executive Branch Lobbying Act by the Board, sets forth in relevant part:

C. The [Board] shall have the authority to impose and collect penalties in accordance with the provisions of Part III of Chapter 15 of Title 42 of the Louisiana Revised Statutes of 1950 for a violation of this Part. In addition, for recurring or egregious violations of this Part, the [Board] may censure any person found guilty of such violation by the [Board] and prohibit such person from lobbying for not less than thirty days and not more than one year.

D. In addition to any other applicable penalties:

(1)(a) Any person required to register and who fails to timely register and any person who fails to timely file any report required by this Part shall be assessed, pursuant to R.S. 42:1157, a late fee of fifty dollars per day.

(b) However, any person who fails to timely file a lobbyist expenditure report filed pursuant to R.S. 24:55(G) or R.S. 49:76(G) which contains all of the information required by this Part and Part III of Chapter 1 of Title 24 of the Louisiana Revised Statutes of 1950 shall be assessed, pursuant to R.S. 42:1157, a late fee of fifty dollars per day.

(2) Any person whose registration or report is filed eleven or more days after the day on which it was due may be assessed, in addition to any late fees pursuant to this Section, after a hearing by the [B]oard, a civil penalty not to exceed ten thousand dollars.

(3) If the [B]oard determines that a person has filed a registration or report required by this Part that is inaccurate or incomplete, the [B]oard shall mail by certified mail a notice of delinquency informing the person that the inaccuracy must be corrected or the missing information must be provided no later than fourteen business days after receipt of the notice of delinquency. The notice of delinquency shall include the deadline for correcting the inaccuracy or providing the missing information. If the person corrects the inaccuracy or provides the missing information prior to the deadline contained in the notice of delinquency, no penalties shall be assessed against the person.

(4) Whoever fails to correct the inaccuracy or provide the missing information by the deadline included in the notice of delinquency shall be subject to penalties as provided by law.

11

(5) Any person who with knowledge of its falsity files a registration or report as required in this Part that contains a false statement or false representation of a material fact shall be subject to the assessment of the civil penalties provided in Part III of Chapter 15 of Title 421 of the Louisiana Revised Statutes of 1950, and the findings of the Board relative to such filing shall be referred by the Board to the appropriate district attorney for prosecution pursuant to R.S. 14:133.

Thus, La. R.S. 49:78 empowers the Board to impose other remedies and relief in addition to penalties.

Reading La. R.S. 49:78.1 alongside La. R.S. 49:78, it is clear that La. R.S. 49:78.1(D) simply references the other applicable penalties as well as the other remedies and relief provided in La. R.S. 49:78(D). Because the provisions of La. R.S. 49:78.1(D) are clear, unambiguous, and their application does not lead to absurd consequences, subject matter jurisdiction to declare null the fee agreement between lobbyist ABC and its principal, Access Health, lies exclusively with the Board. Accordingly, the district court was without jurisdiction to issue a judgment seeking the relief Access Health sought, i.e., a declaration that the fee agreement between Access Health and ABC was a nullity.[10] Accordingly, the interlocutory judgments, denying ABC's lack of subject matter jurisdiction exceptions, issued on May 20, 2022 and October 24, 2022, are reversed.

Although ABC requests that this court reverse the district court's conclusion overruling its exception of prescription insofar as Access Health's reconventional demand for a declaration that the fee agreement is null,[11] because the district court

_____

[10] On appeal, Access Health suggests the fee agreement's unenforceability is an affirmative defense which it is entitled to assert in response to ABC's breach of contract claim. But ABC directed the lack of subject matter jurisdiction exceptions at Access Health's reconventional demand, which sought a declaration that the fee agreement was null, which is the same relief Access Health seeks through its affirmative defense. Mindful that the party asserting the affirmative defense has the burden of proving it, see *LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.*, 2013-0163 (La. App. 1st Cir. 11/7/14), 167 So.3d 746, 756, writ not considered, 2015-0086 (La. 4/2/15), 162 So.3d 392, our disposition of the exceptions of subject matter jurisdiction, therefore, necessarily disposes of Access Health's affirmative defense contention.

[11] See La. R.S. 49:78(B) ("No action to enforce any provision of [the Act] shall be commenced after expiration of two years after the occurrence of the alleged violation.").

12

lacks jurisdiction, the objection is not properly before us. Accordingly, we pretermit such a discussion. See *Peychaud v. Williams*, 2021-0686 (La. App. 4th Cir. 4/6/22), 337 So.3d 957, 966 (Reversal of the judgment on the exceptions of lack of subject matter jurisdiction results in the termination of the action and pretermission of a review of an exception of prescription is proper). See also *Suire v. Lafayette City-Parish Consolidated Gov't*, 2004-1459 (La. 4/12/05), 907 So.2d 37, 55 (An appellate court will not render advisory opinions from which no practical results will follow.).

Because the district court lacked jurisdiction over Access Health's reconventional demand, which sought a declaration that the fee agreement between ABC and Access Health was null, it improvidently granted summary judgment. Accordingly, the district court's summary judgment dismissal of ABC's claim for breach of contract damages is reversed.

## DECREE

For these reasons, the district court's interlocutory judgments are reversed. Thus, the May 20, 2022 judgment, overruling the exception of lack of subject matter jurisdiction is reversed along with the May 20, 2022 judgment, granting summary judgment in favor of Access Health and dismissing ABC's breach of contract cause of action based on a conclusion that the fee agreement was null. Additionally, the writ is granted and the October 24, 2022 judgment, overruling the exception of subject matter jurisdiction is reversed. The matter is remanded for further proceedings. Appeal costs are assessed against defendants-appellees, Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama.

**MAY 20, 2022 JUDGMENTS REVERSED. WRIT GRANTED AND OCTOBER 24, 2022 JUDGMENT REVERSED. REMANDED.**

13